### In re JOHNSON, a Minor.

[Cite as *In re Johnson* (1995), 106 Ohio App.3d 38.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940664.

Decided Aug. 23, 1995.

40

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for appellee.

*Richard A. Magnus,* for appellant.

---

*Per Curiam.*

Cincinnati Police Officer Pierce Bryant arrested appellant Antonio Johnson, a thirteen-year-old, for felony theft under R.C. 2913.02 (delinquent child under R.C. 2151.011). Officer Bryant stated that while on an off-duty detail at a Kroger's store in the Corryville section of Cincinnati, he observed Johnson and two other juveniles conceal cigars, alcohol and condoms and attempt to leave the store. At that point, Officer Bryant arrested Johnson. The value of the items totaled $18.05.

Johnson maintained that he had not participated in a theft, but instead had been injured when he fell on his head and, while dazed, had followed his friends into the store only to be arrested upon leaving.

Johnson brings six assignments of error, arguing that the juvenile proceedings violated his procedural due process rights. For the reasons set out below, we reverse and remand for a new trial with instructions to follow the procedural due process requirements set out in Juv.R. 29(B).

 In his first assignment, Johnson argues that the trial court accepted his waiver of counsel without proper assurance that the waiver was knowing, intelligent and voluntary. Juveniles must be afforded representation by legal counsel at all stages of the proceedings in juvenile court. R.C. 2151.352; Juv.R. 29(B); *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. When a defendant waives his or her right to counsel, the court must make sufficient inquiry to determine whether the defendant has done so knowingly, intelligently and voluntarily. *State v. Gibson* (1976), 45 Ohio St.2d 366, 74 O.O.2d 525, 345 N.E.2d 399, paragraph one of the syllabus; *State v. Grimes* (1984), 17 Ohio App.3d 71, 17 OBR 126, 477 N.E.2d 1219. The court's inquiry must encompass the totality of the circumstances before the court can be satisfied that the waiver was given knowingly, intelligently and voluntarily. *United States v. Weninger* (C.A.10, 1980), 624 F.2d 163, 164, certiorari denied (1980), 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470; *State v. Gibson, supra.* In applying the totality-of-the-circumstances test to juveniles, courts must give close scrutiny to factors such as a juvenile's age, emotional stability, mental capacity, and prior criminal experience. See *In re Watson* (1989), 47 Ohio St.3d 86, 548 N.E.2d 210; *State v. Bell* (1976), 48 Ohio St.2d 270, 2 O.O.3d 427, 358 N.E.2d 556; *In re Gault, supra.*

In this case, Johnson appeared for three separate hearings: an initial hearing, an adjudicatory hearing, and a dispositional hearing. At the initial hearing, the referee asked Johnson, "Do you want a lawyer?" Johnson responded, "No." Then the referee told Johnson to sign the waiver and Johnson complied. This was the extent of the inquiry, and clearly failed to take into account all of the circumstances necessary to determine whether Johnson waived his right to counsel knowingly, intelligently, and voluntarily. Within the totality-of-the-circumstances test, the court was required to take special care given Johnson's age (thirteen). Instead, the referee did not even explain to Johnson his rights.

At the adjudicatory hearing, a different referee said to Johnson, "Antonio, you understand that you do have the right to have an attorney. If you want an attorney, I'd give you that opportunity. You understand that?"

Johnson responded, "Uh-huh."

The referee continued, "And that if you can't afford to hire a private attorney, you can get a public defender?" Johnson did not respond. The referee continued, "Do you want to talk to an attorney, or do you want to go today without an attorney?"

Johnson responded, "I don't want one."

The referee then stated, "I need you to sign another waiver then."

In this case, the referee gave a basic explanation to Johnson, but failed to inquire into any circumstances that would demonstrate that Johnson knowingly, intelligently, and voluntarily waived his right to counsel as required by *In re Gault, supra, In re Watson, supra,* and *State v. Bell, supra.*

At the dispositional hearing, the judge did not even broach the subject of the right to counsel, despite the clear right to legal counsel at *all* stages of the proceedings in juvenile court under R.C. 2151.352.

Therefore, this assignment of error is well taken. As Johnson's counsel on appeal points out, most of the errors in the record could have easily been avoided if Johnson had had an attorney appointed to represent him.

■ In his second assignment, Johnson argues that the juvenile court erred by failing to appoint a guardian *ad litem* who would effectively advance Johnson's interests. R.C. 2151.281(A) requires the court to appoint a guardian *ad litem* to protect the interest of the juvenile in a delinquency proceeding when the court finds that there is a conflict of interest between the juvenile and his parent or guardian. R.C. 2151.281(D) requires the court to discharge a guardian *ad litem* when the guardian *ad litem* fails "to faithfully discharge his duties."

R.C. 2151.281(I) states that the guardian *ad litem* "shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, guardian, monitoring court proceedings, and monitoring the services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child."

The court is not required to appoint an attorney, but rather can appoint any "qualified volunteer." R.C. 2151.281(J). However, if the court finds that the juvenile's wishes conflict with the guardian *ad litem's* representation, the court is required to appoint a separate attorney to represent the juvenile's wishes. R.C. 2151.281(H).

Virtually all of the case law regarding the performance of a guardian *ad litem's* duties concerns the best interest of the child in custody cases. However, it is clear that the guardian *ad litem's* role in proceedings is to assist the court by

ensuring that the juvenile's statutory rights are protected. *Lovejoy v. Cuyahoga Cty. Dept. of Human Serv.* (1991), 76 Ohio App.3d 514, 602 N.E.2d 405.

In the case at bar, the referee appointed Johnson's grandmother, Beatrice Hayden, as guardian *ad litem* at the initial hearing. Referee Melvin asked Hayden if she was Johnson's legal guardian, and she said, "No. His father is over in Christ Hospital in intensive care." The referee then asked for her name and appointed her guardian *ad litem*. She responded, "His father wants custody of him. I'm just here to represent him today." The referee responded, "Yeah. And that's basically what I'm doing. I'm writing in here that you're standing in today as guardian." From this record, one could assume that Hayden was to serve only for that day. The prosecutor argues that Hayden was appointed for the entire proceeding. In either event, the appointment was ambiguous, and there was no indication that Hayden even understood her role as guardian *ad litem*. Her only action at the initial hearing was to sign the waiver of counsel for Johnson.

At the adjudicatory hearing, the referee did not reinstall Hayden as guardian *ad litem*, presumably because he assumed that she was acting on Johnson's behalf as guardian *ad litem* from the previous ambiguous appointment. As guardian *ad litem*, Hayden cross-examined the police officer, asking only one question, and then accused Johnson of lying when questioning him about what occurred. At that point, the referee cut her off to prevent further damage. However, later, she advised the court that confinement was the best solution for him. It seems clear that Hayden did not protect Johnson's interests as required by R.C. 2151.281(A) because she damaged Johnson's credibility and recommended a stiff penalty.

By failing to appoint a guardian *ad litem* capable of assisting the court in ensuring that the child's statutory rights are protected, the court failed to discharge its duty under R.C. 2151.281(D).

We find this assignment of error is well taken, especially in light of the fact that Johnson had no representation by counsel.

■ In his third assignment, Johnson asserts that the juvenile court erred by allowing the prosecutor to prove elements of the state's case by questioning Johnson (an unrepresented minor held in custody) without informing him of his *Miranda* rights against self-incrimination. The *Miranda* requirement is clear. A defendant must voluntarily, knowingly, and intelligently waive his right to remain silent when in custody and unrepresented by counsel. R.C. 2901.01(K)(8); *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *In re Gault, supra; State v. Gibson, supra; State v. Grimes supra.*

44

The court did not apprise Johnson of his Fifth Amendment rights at any time during the proceedings, either at the initial hearing, at the adjudicatory hearing, or at the dispositional hearing. Johnson's testimony was unnecessary to set out the elements of the theft offense, because Officer Bryant testified to each element.

However, Johnson was asked to stipulate to a prior theft offense. The prosecution needed the stipulation under R.C. 2151.355(A)(4) for the disposition chosen: confinement at the Ohio Department of Youth Services from six months until Johnson reached the age of emancipation (five years). Johnson cannot be considered to have waived his rights without a voluntary, knowing and intelligent waiver.

Therefore, we find this assignment of error is well taken.

In his fourth assignment, Johnson argues that the juvenile court erred by adjudicating Johnson a delinquent child without proof of every element of the charge supported by sufficient, competent, credible evidence. Johnson argues that as an unrepresented juvenile, he was not competent to stipulate either to his age or to the prior offense, even had he received his *Miranda* warnings.

With regard to Johnson's age, parties are not permitted to confer subject-matter jurisdiction on a court solely by stipulation of parties. *Fox v. Eaton Corp.* (1976), 48 Ohio St.2d 236, 2 O.O.3d 408, 358 N.E.2d 536. The court must actually have subject-matter jurisdiction. In this case, it seems clear that the juvenile court held subject-matter jurisdiction in this matter because Johnson was thirteen years old at the time he was tried.

With regard to Johnson's stipulation to a prior offense, there is no case law that holds a minor incompetent to stipulate or admit to facts. Therefore, this issue turns on whether the court afforded Johnson his Fifth Amendment rights as argued in Johnson's third assignment of error. Johnson cannot be held to his stipulations without having received and understood a *Miranda* warning.

Therefore, this assignment of error is not well taken with respect to subject-matter jurisdiction because it is clear from the record that the juvenile court has subject-matter jurisdiction over Johnson. This assignment of error is well taken with respect to the prior-offense stipulation for the reasons we discussed in examining the third assignment of error.

In his fifth assignment, Johnson argues that the juvenile court erred by failing to comply with Juv.R. 29(B).

Juv.R. 29(B) gives five statutory duties to the juvenile court to ensure that juveniles are afforded the minimum protection under the Constitution. First, the juvenile court must ascertain whether notice requirements have been met.

Second, the juvenile court must inform the parties of the substance of the complaint, the purpose of the hearing, and the possible consequences of the hearing. Third, the juvenile court must inform unrepresented parties of their right to counsel and determine whether those parties waive their right to counsel. Fourth, the juvenile court must appoint counsel for any party that does not waive the right to counsel. Finally, the juvenile court must inform any unrepresented party who waives the right to counsel of the right to obtain counsel at any time in the proceedings, the right to remain silent, the right to offer evidence, the right to cross-examine witnesses, and the right to have a record of all proceedings made.

The referees and the judge failed under each element of Juv.R. 29(B) at each hearing. At the initial hearing, the clerk read the complaint in the record, but the referee failed to ascertain whether notice requirements were met, failed to disclose either the purpose of the hearing or the possible penalties, failed to determine whether Johnson waived his right to counsel voluntarily, knowingly and intelligently, and failed to inform Johnson of his rights to obtain counsel at any time, remain silent, offer evidence, cross-examine witnesses, and have a record made of the proceedings.

At the adjudicatory hearing, the referee failed to ascertain whether notice requirements were met, failed to disclose either the purpose of the hearing or the possible penalties, and failed to inform Johnson of his right to obtain counsel at any time, remain silent, and have a record made of the proceedings.

At the dispositional hearing, the judge failed to inform Johnson of any of his rights, and even engaged Johnson in a guessing game regarding what penalties Johnson could incur, demonstrating that Johnson was still unaware of the possible five years of confinement at the Ohio Youth Services.

The court must comply with Juv.R. 29(B). This rule protects juveniles from the type of violations of right that occurred in this case, and protects the court from second-guessing by the parties after adjudication.

We find this assignment of error is well taken.

 Finally, Johnson argues in his sixth assignment that the juvenile court erred by conducting a dispositional hearing with a judge after a referee conducted the adjudicatory hearing.

Juv.R. 34(B) states that the judge or referee who presided at the adjudicatory hearing shall, if possible, preside at the dispositional hearing. See R.C. 2151.35(B)(2)(a). The obvious advantage of this rule is that the referee or judge hearing the facts can best determine how to handle juveniles presented in light of those facts.

However, at times, it is not possible for the referee at the adjudicatory hearing also to preside over the dispositional hearing. For this reason, the legislature uses the language "if possible" to allow dispositional hearings to continue under those circumstances.

In this case, the record does not show how Johnson has been prejudiced by having a different individual preside over his dispositional hearing than over his adjudicatory hearing. The record does not reflect that it was possible for the referee to preside over both hearings.

Absent such showings, this assignment of error is not well taken and is overruled.

In sum, we find the first, second, third, fifth and part of the fourth assignments of error are well taken, and overrule the sixth and part of the fourth assignments of error.

Accordingly, we reverse and remand for new hearings with instructions to follow due process requirements both under Juv.R. 29(B) and consistent with this decision to ensure that Johnson receives the full protection of his rights.

*Judgment reversed*
*and cause remanded.*

DOAN, P.J., M.B. BETTMAN and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.