**In re HOWARD.**

[Cite as *In re Howard* (1997), 119 Ohio App.3d 201.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960202.

Decided April 16, 1997.

202

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *William E. Breyer,* Assistant Prosecuting Attorney, for appellee.

*Timothy J. Deardorff,* for appellant.

MARIANNA BROWN BETTMAN, Presiding Judge.

Defendant-appellant Maurice Howard appeals from the judgment of the juvenile court adjudicating him delinquent and committing him to the custody of the Department of Youth Services ("DYS") for an indefinite term of a minimum of twelve months, and a maximum not to exceed Howard's reaching age twenty-one. The adjudication was based upon a finding beyond a reasonable doubt that Howard had committed what would be the crime of robbery were he an adult.[1]

In his first three assignments of error, Howard argues that the court erred in overruling his motion for acquittal, that the adjudication of delinquency is not supported by sufficient evidence, and that the adjudication of delinquency is against the manifest weight of the evidence. We find no merit in any of these.

The robbery statute, R.C. 2911.02, provides:

"(A) No person, in attempting or committing a theft offense, * * * or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another."

The theft statute, R.C. 2913.02, provides:

"(A) No person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"* * *

"(4) By threat."

An adjudication of juvenile delinquency must be supported by proof beyond a reasonable doubt. Juv.R. 29(E)(4). A motion for acquittal must be denied when, after construing the evidence in the light most favorable to the prosecution, "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. "In determining the legal sufficiency of the state's evidence, 'the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573–574; *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825." *In re Washington* (1996), 75 Ohio St.3d 390, 392, 662 N.E.2d 346, 348.

---

1. We have *sua sponte* removed this case from the accelerated calendar.

A judgment will not be reversed on manifest weight unless we find, after reviewing the entire record, that the trier of fact in resolving conflicts in the evidence clearly lost its way and created a manifest miscarriage of justice. *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717. The weight and credibility of the evidence are best left to the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

The victim in this case, Kyle Olsen, testified that a group of boys approached him on the evening of January 25, 1995, on the street outside of his apartment, and asked him if he would like to purchase crack cocaine. When Olsen said no, one member of the group identified Olsen as the person who had called the police on them the previous night. One of the boys shouted "get his money" and chased Olsen down the street to his apartment building. The boys shouted threats at Olsen. At the end of the chase, Fernando Roland threw a rock at Olsen, striking him in the stomach. Olsen positively identified Howard at trial as one of his assailants.

Howard testified that he had an altercation with Olsen the night in question, but gave a different version of the facts. He stated that Olsen approached him and his two friends and asked them if they had any crack cocaine to sell. When the boys responded negatively, Olsen asked them if they had change for a $20 bill. When Howard pulled out two tens, Olsen snatched the cash out of his hands and ran down the street. The boys chased after him, and Fernando Roland threw a rock at him.

Howard specifically objects to the adjudication because there was no evidence introduced to establish that Howard made threats or threw the rock at Olsen. However, the state proceeded against Howard on a complicity theory.

After reviewing the evidence, we hold that the juvenile court did not err in overruling Howard's motion for acquittal, and that the adjudication of delinquency is supported by sufficient, credible evidence. Finding no miscarriage of justice, we overrule the first three assignments of error.

In his fourth assignment of error, Howard argues that the juvenile court erred in failing to appoint a guardian *ad litem* for him in accordance with R.C. 2151.281(A)(2).

R.C. 2151.281 provides:

"(A) The court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged or adjudicated delinquent child or unruly child when:

"* * *

"(2) The court finds that there is a conflict of interest between the child and his parent, guardian, or legal custodian."

Similarly, Juv.R. 4(B)(2) provides that the court shall appoint a guardian *ad litem* to protect the interest of a child in juvenile proceedings when "the interests of the child and the interests of the parent may conflict."

█ The problem in this case, and others like it, is in clearly understanding the roles of the various individuals. If the juvenile has a lawyer, the role of the lawyer is to represent his or her client zealously within the bounds of the law. The job of a guardian *ad litem* is to investigate the minor's situation, and ask the court to do what the guardian *ad litem* believes is in the minor's best interest. *In re Baby Girl Baxter* (1985), 17 Ohio St.3d 229, 232, 17 OBR 469, 470–471, 479 N.E.2d 257, 260. A lawyer can take on both responsibilities, but as noted in *Baxter*, the duties of a lawyer and the duties of a guardian *ad litem* may conflict. In that circumstance, one lawyer cannot perform both functions. *Id.* Generally, it is counsel who must bring potential conflicts to the attention of the court, but where counsel fails to perceive a conflict, or fails to bring it to the court's attention, the court may be obliged to act *sua sponte*. See *id.* at 234–235, 17 OBR at 472–474, 479 N.E.2d at 261 (Celebrezze, C.J., concurring separately).

█ It is also the basic responsibility of a parent, the natural guardian, to look out for the best interest of the child. In theory, then, the parent and guardian *ad litem* have the same responsibility. See Stuckey, Guardians *Ad Litem* as Surrogate Parents: Implications for Role Definition and Confidentiality (1996), 64 Fordham L.Rev. 1785. That is not always the reality, however. A parent may clearly have her own agenda, or be advocating her own best interest, which may or may not also be the child's. The law requires the appointment of a guardian *ad litem* where the interests of the parent and the child conflict. R.C. 2151.281; Juv.R. 4(B). The directive in R.C. 2151.281(A)(2) is mandatory and courts must follow legislative mandates. *In re McQuitty* (May 5, 1986), Butler App. No. CA85–04–016, unreported, 1986 WL 5151.

█ The problem is in determining what is meant by "conflict of interest" such that a guardian *ad litem* must be appointed. This is a different conflict than the one addressed in Baxter between the roles of attorney and guardian *ad litem*. It is a conflict between parent and child. Such conflicts are more apparent in dependency, neglect, and abuse proceedings than in delinquency cases.[2] *In re Johnson* (1995), 106 Ohio App.3d 38, 665 N.E.2d 247.

---

2. The appointment of a guardian *ad litem* to protect the interests of the child is mandatory in any proceeding concerning an alleged abused or neglected child. R.C. 2151.281(B)(1).

The question presented in this appeal is a knotty one: what happens in a juvenile delinquency case when the parent speaks up in a dispositional hearing against the child's penal interest?

In this case, Howard was represented by counsel throughout the proceedings. Howard's mother told the judge at the dispositional hearing that she thought that her son should be sent to the DYS, and the reasons she thought so. The child made his wishes clear that he wanted to stay at a facility known as Hillcrest School. Howard's lawyer said nothing.

■ Appellant would have us write a bright-line rule that any time a parent speaks against a child's penal interest, a guardian *ad litem* must be appointed. This we decline to do. We do not believe that either the statute or the rule requires that every time a parent and child disagree, a guardian *ad litem* must be appointed. Nor will we write a bright-line rule that any time a parent speaks against a child's penal interest, it is not in the child's best interest. Nevertheless, we caution the court and counsel that in a delinquency case, when a parent does speak against a child's penal interest, a colorable claim of a conflict is at least raised, requiring thorough inquiry.

■ The record in the case before us reflects that, at the time of the final dispositional hearing, Howard was in the temporary custody of Hillcrest School. He had been previously admonished by the court that if there were any problems in the future he would do time in the state institution. In making its decision, the court heard testimony from a representative from Hillcrest School, and also was able to consider Howard's own preference to stay at Hillcrest.

■ Howard's mother spoke in some detail about why she believed that Howard would be better off in the DYS. Parents are not compelled to advocate what the child wants if they believe such a result would not be in the child's best interest. There was nothing in this record to suggest that Howard's mother was acting other than in Howard's best interest. The fact that her position was in her son's best interest was validated by the testimony of the representative from Hillcrest School.

Howard's rights were adequately protected and all the information necessary to make a decision in accordance with R.C. 2151.01 was before the court. Thus, we find no error in this case in the failure to appoint a guardian *ad litem.* See *In re Wilkins* (June 26, 1996), Hancock App. No. 5-96-1, unreported, 1996 WL 355046; *In re Boatman* (Nov. 1, 1995), Defiance App. No. 4-95-7, unreported, 1995 WL 657116. Compare *In re Johnson, supra* (minor had no counsel, grandmother antagonistic to minor and inadequate in attempting to represent

him in adjudicatory hearing). Appellant's fourth assignment of error is overruled.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

PAINTER, J., concurs.

HILDEBRANDT, J., concurs in judgment only.

HILDEBRANDT, Judge, concurring in judgment only.

I concur with my colleagues in the analyses and dispositions of the first three assignments of error. While I concur in the disposition of appellant's fourth assignment of error, I believe that the juvenile court must have flexibility in addressing the needs of the children who appear before it on a case-by-case basis.