## In re SMITH.

[Cite as *In re Smith* (2001), 142 Ohio App.3d 16.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77905.

Decided March 26, 2001.

*William D. Mason,* Cuyahoga County Prosecuting Attorney, and *Lawrence Rafalski,* Assistant Prosecuting Attorney, Juvenile Division, for appellee.

*David H. Bodiker,* State Public Defender, and *Jill E. Beeler,* Assistant State Public Defender, for appellant.

---

MICHAEL J. CORRIGAN, Judge.

Juvenile Smith admitted the allegations of a delinquency complaint, which contained two charges which, if committed by an adult, would constitute an assault with a deadly weapon. The court accepted the admissions and placed her in detention with the Ohio Department of Youth Services. In this appeal, the juvenile complains that (1) the court erred by failing to appoint counsel, (2) the complaint against her was defective, and (3) the court failed to record certain proceedings before a magistrate.

## I

The juvenile first complains that the court erred by accepting her waiver of counsel. She maintains that R.C. 2151.352 requires the court to appoint counsel because she was not represented by a parent, guardian, or custodian. In addition, she claims that her waiver of counsel was insufficient because the court failed to advise her of the right that she was waiving.

## A

Juveniles have the same functional rights in admissions cases as adult defendants do in guilty plea cases, including the right to counsel. *In re Gault* (1967), 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. Like any other right, the right to counsel may be waived as long as the waiver is voluntary, knowing, and intelligent. See *In re East* (1995), 105 Ohio App.3d 221, 223, 663 N.E.2d 983, 984–985.

The juvenile argues that despite her right to waive counsel if she chooses, R.C. 2151.352 provides a statutory right to counsel that, as applicable in this case, must be afforded to her *before* she is permitted to waive the right to counsel. She relies on the following language: "Counsel must be provided for a child not represented by his parent, guardian, or custodian." She claims that she did not have a parent, guardian, or custodian representing her at the time she waived her right to counsel, so the court should have appointed counsel for her before permitting her to waive that right.

R.C. 2151.011(B)(12) defines a "custodian" as a "person who has legal custody of a child or a public children services agency or private child placing agency that has permanent, temporary, or legal custody of a child." During the period when the juvenile appeared at the adjudicatory phase of the proceedings, she had been committed to the custody of Act One, a residential facility. During the adjudicatory hearing, a social worker from Act One appeared with the juvenile. We find that this person constituted a "custodian" for purposes of R.C. 2151.352—a fact the juvenile does not contest. See Appellant's Reply Brief at 2 ("Therefore, the social worker was present as *** Smith's guardian/custodian."). The social worker's status as the juvenile's custodian would nullify the automatic–appointment–of–counsel provision in R.C. 2151.352.

The juvenile complains that the social worker could not stand with her because the social worker did not have the juvenile's best legal interests in mind. The juvenile points to this response the custodian gave to the court when asked if he discussed the case with the juvenile: "I spoke to her, then, Your Honor, and I explained to her, you know, if she did it, she should admit it. If she didn't do it, she · shouldn't admit it." The juvenile claims this response shows that the custodian did not have the juvenile's best legal interests in mind sufficient to overcome her right to legal counsel.

Juv.R. 4(B)(2) requires the court to appoint a guardian *ad litem* to protect "the interests of a child when the interests of the child and interests of the parents may conflict." When considering the quantum of evidence to show a conflict, the courts have focused on whether the circumstances show a "strong enough possibility" of a conflict to require the appointment of a guardian *ad litem*. *In re Sappington* (1997), 123 Ohio App.3d 448, 454, 704 N.E.2d 339, 342–343.

Juvenile courts, unlike those courts that try adults, are not only required to protect the constitutional rights of those who appear before them but are also charged with protecting the best interests of a child. See Juv.R. 1(B)(1). To that end, some courts have recognized an emerging distinction between a child's "best interests" and a child's "best legal interests."

An example of this distinction appears in *Sappington*, where the father of an unruly and emotionally disturbed child represented the child at an adjudicatory hearing and asked a magistrate to consider confining the child beyond his eighteenth birthday so that the child would continue to be eligible for psychological treatment. The court of appeals agreed that "[i]t may well be that such commitment was in [the child's] best interests," but nonetheless went on to find that the juvenile court should have appointed counsel for the child because the father's request for commitment showed a conflict of interest inconsistent with ensuring that the child's statutory rights were protected. *Sappington*, 123 Ohio App.3d at 455, 704 N.E.2d at 343–344. See, also, *In re Johnson* (1995), 106 Ohio

App.3d 38, 665 N.E.2d 247 (grandmother did not have the child's best legal interests in mind when she advised the court that confinement was the best solution for the child); *In re Howard* (1997), 119 Ohio App.3d 201, 207, 695 N.E.2d 1, 4–5 (colorable claim of conflict of child's penal interest arises when parent speaks against those interests); *In re Spradlin* (2000), 140 Ohio App.3d 402, 747 N.E.2d 877 (grandfather of alleged delinquent told the court of other acts committed by delinquent that went beyond the allegations of the complaint); *In re Shaw* (Sept. 27, 1996), Fairfield App. No. 95CA78, unreported, 1996 WL 570861 (child represented by a parent who was the victim of alleged domestic violence committed against that parent).

█ We view this distinction with trepidation, for it seems to us ill-conceived for the juvenile law to subordinate blindly a child's best interests to that of the child's best legal interests. It is a basic premise of juvenile law that parents, or the state if need be, are charged with directing the lives of children. In *Schall v. Martin* (1984), 467 U.S. 253, 265, 104 S.Ct. 2403, 2410, 81 L.Ed.2d 207, 218, the United States Supreme Court stated:

█ "Children, by definition, are not assumed to have the capacity to take care of themselves. They are assumed to be subject to the control of their parents, and if parental control falters, the State must play its *parens patriae.* See *State v. Gleason,* 404 A.2d 573, 580 (Me.1979); *People ex rel. Wayburn v. Schupf, supra* [39 N.Y.2d 682], at 690 [385 N.Y.S.2d 518, at 522, 350 N.E.2d 906, at 910]; *Baker v. Smith,* 477 S.W.2d 149, 150–151 (Ky.App.1971). In this respect, the juvenile's liberty interest may, in appropriate circumstances, be subordinated to the State's *'parens patriae* interest in preserving and promoting the welfare of the child.' *Santosky v. Kramer* [ (1982), 455 U.S. 745, 766, 102 S.Ct. 1388, 1401, 71 L.Ed.2d 599, 615]."

█ The juvenile law exists in large part to promote the rehabilitation of juvenile offenders. *Kent v. United States* (1966), 383 U.S. 541, 554, 86 S.Ct. 1045, 1053–1054, 16 L.Ed.2d 84, 93–94 (interpreting the Juvenile Court Act as providing measures of guidance and rehabilitation for the child and protection for society). No attempt at juvenile rehabilitation would be complete without instilling in the child the idea that she alone bears responsibility for her actions. A parent, guardian, or custodian is often the best person to make that point. To that end, the custodian's advice that the juvenile admit to the charges if true, or deny them if false, is a solid bit of parenting—a piece of advice that should be passed on to every child. If ever there is a time to instill in a child a sense of obligation and accountability, it is at this stage in a child's life, when the mistakes made might serve as a learning experience and when those mistakes will not hang over the child during adulthood. It would serve no meaningful rehabilitative

purpose for a court to appoint legal counsel to a clearly delinquent child for the sole purpose of dragging out proceedings and delaying the inevitable, particularly when, as in *Sappington*, all agree that a certain disposition would be in a child's best interests. Juvenile court should not be the place where children learn they can finesse the system.

But even if we were to accept in this case a distinction between a child's best interests and a child's best legal interests, our review of the transcript shows nothing that convinces us that the juvenile's custodian acted contrary to her best legal interests. When asked by the court to describe his conversations with the juvenile, the custodian told the court that he told the juvenile, "[I]f she did it, she should admit it. If she didn't do it, she shouldn't admit it." The custodian's advice to the child did not urge her to admit to something she did not do, nor did it recommend to the court any suggested disposition of the matter. We see nothing that would suggest the custodian had something other than the juvenile's best legal interests in mind.

### B

The juvenile next argues that she did not intelligently waive her right to counsel because the court did not sufficiently apprise her of the right that she was waiving.

There are no hard-and-fast rules for determining on appeal whether a juvenile understands what rights she is waiving when entering an admission. Juv.R. 29(D) requires the court to determine whether (1) the party is making the admission voluntarily, with understanding of the nature of the charge and the consequences of the admission and (2) the party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence, the right to remain silent, and the right to present evidence at the adjudicatory hearing.

The court must personally address the child to determine whether the admission is knowing and voluntary. *In re McKenzie* (1995), 102 Ohio App.3d 275, 656 N.E.2d 1377; *In re Nicholson* (1999), 132 Ohio App.3d 303, 724 N.E.2d 1217. Here, the court told the juvenile that she was entitled to counsel and that the state would appoint counsel if she could not afford it. This colloquy was insufficient, under the circumstances, to establish a knowing waiver of the right to counsel.

In *In re Johnson* (1995), 106 Ohio App.3d 38, 665 N.E.2d 247, the court of appeals considered a nearly identical factual situation. A juvenile court referee asked Johnson if he understood that he had the right to counsel and that if he could not afford an attorney, one would be appointed for him. Johnson told the

referee that he understood the right to counsel and said, "I don't want one." The court of appeals found this colloquy "gave a basic explanation to Johnson, but failed to inquire into any circumstances that would demonstrate that Johnson knowingly, intelligently, and voluntarily waived his right to counsel * * *." *Id.*, 106 Ohio App.3d at 42, 665 N.E.2d at 249.

The court's colloquy in this case went no further than that in *Johnson.* The court told the juvenile, "[Y]ou have the right to an attorney. If you cannot afford one, one will be appointed for you. Do you wish to have an attorney?" When the juvenile replied, "No," the court said, "[T]he juvenile waives her right to an attorney."

The court did not attempt to ascertain whether the juvenile understood the nature of the right to counsel that she would be waiving. Consistent with the holding in *Johnson*, we find that this colloquy did not establish that the juvenile fully understand the nature of the right that she was waiving. The first assignment of error is sustained.

## II

The second assignment complains that (1) the juvenile did not have sufficient notice of the nature of the charge against her because she did not receive a copy of the complaint until the time of the adjudicatory hearing and (2) the complaint failed to allege that a deadly weapon had been used.

█ The juvenile's first argument is that she lacked notice of the complaint. The record shows that she first saw the complaint at the time of the adjudicatory hearing. At that point, the court said that it would give her a copy of the complaint and have her sign it. The court then read the complaint before proceeding to take the juvenile's admission.

We do not understand this argument to suggest that the juvenile had no notice of the charges against her. Her presence at the adjudicatory hearing necessarily implied that she had some notice of the complaint. Moreover, we see no reason to find that her failure to see the complaint until immediately before entering her admission somehow affected her admission. Absent some form of prejudice stemming from her failure to see the complaint at the time of the adjudicatory hearing, we cannot find error.

█ The juvenile next complains that the complaint failed to state the juvenile's age and the date of the offenses. When the court read the complaint, it noted that the complaint omitted the victim's age and the date of the offenses. The court amended the complaint to insert the missing language.

Juv.R. 22(B) permits the court to amend a pleading, on its own order, after the commencement of the adjudicatory hearing. The court needs permission to amend a complaint alleging delinquency only if the amendment would change the name or identity of the offense. *Id.*

The court's decision to amend the indictment did not prejudice the juvenile because it did not change the name or identity of the offenses. Nor does the juvenile assert any prejudice from the amendment. Under these circumstances, we find no error.

■ The juvenile next argues that the complaint failed to allege the use of a deadly weapon. The complaint charged the juvenile with assault with a deadly weapon, the weapon being a ballpoint pen. The juvenile complains that a ballpoint pen is not a deadly weapon, and that even the court found the thought of it funny that a ballpoint pen could be used as a deadly weapon.

R.C. 2923.11 defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." The Legislative Service Commission comment to Am.Sub.H.B. No. 511, with respect to R.C. 2923.11, points out that the definition of a deadly weapon has two parts: (1) the device must be capable of causing death and (2) it must be designed or specially adapted for use as a weapon, or is carried, possessed, or used as a weapon.

■ An item does not have to be one that kills in order to be a deadly weapon. No item, no matter how small or commonplace, can be safely disregarded for its capacity to cause death when it is wielded with the requisite intent and force. See *State v. Deboe* (1977), 62 Ohio App.2d 192, 193–194, 16 O.O.3d 467, 468–469, 406 N.E.2d 536, 537–538. A reasonable trier of fact could find the ballpoint end of a pen sufficiently sharp that it could pierce the human body and, if used on a particularly vulnerable spot, could cause death. The second assignment of error is overruled.

## III

■ The third assignment of error complains that the court violated Juv.R. 37 by failing to record certain proceedings before a magistrate.

As far as we can tell, the proceedings before the magistrate were ancillary to the delinquency complaint and involved the alleged violation of a court order. The hearing occurred after the juvenile entered her admission to the delinquency complaint, but before disposition. The magistrate's decision indicates that the juvenile was represented by counsel and entered an admission to the charge. The magistrate remanded the child into the custody of detention services.

We agree with the juvenile that the proceedings before the magistrate should have been recorded pursuant to Juv.R. 37(A) and 40(D)(2). However, we are unable to discern how this failure to record the proceedings has caused her prejudice. The detention order would have expired on its own once the court proceeded to disposition on the delinquency complaint, so there is no prejudice from the detention order. The juvenile makes no argument that her rights were violated in any respect before the magistrate. Absent some plausible suggestion of prejudice, we cannot find any error in the magistrate's failure to record the proceedings. The third assignment of error is overruled.

*Judgment reversed*
*and cause remanded.*

ROCCO, P.J., and JAMES D. SWEENEY, J., concur.