DECISION AND JUDGMENT ENTRY
{¶ 1} John P. Estes appeals the judgment of the Washington County Court of Common Pleas, Juvenile Division, committing him to the legal custody of the Ohio Department of Youth Services ("DYS") for consecutive six-month terms. Estes contends that the trial court failed to obtain a valid waiver of counsel. Because we find that, based upon the totality of the circumstances, Estes knowingly, intelligently, and voluntarily waived his right to counsel, we disagree. Estes further argues that the trial court deprived him of his constitutional rights to due process and equal protection of the law by increasing the length of his commitment to DYS after finding that he violated his probation. Because we find that juveniles adjudicated delinquent and adults convicted of a crime are not similarly situated, and we find that there is a rational basis for denying juveniles the right granted to adult offenders by R.C. 2929.15 and R.C. 2929.19, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} In October 2002, the trial court adjudicated Estes delinquent for two counts of theft of drugs, one count of trafficking in drugs, and one count of possession of drugs. The trial court committed Estes to DYS for six months on each of the first three counts, and ordered that the commitments would run concurrently. The trial court admonished Estes on count four. The trial court then suspended Estes' commitment to DYS and placed him on probation.
 {¶ 3} Thereafter, the trial court adjudicated Estes delinquent on four separate occasions for violating the terms of his probation. The trial court continued Estes' probation after each of the first three violations. Additionally, after the third probation violation, the trial court committed Estes to the Washington County Juvenile Center to complete a drug treatment program.
 {¶ 4} In January 2004, the trial court adjudicated Estes delinquent for violating the terms of his probation for the fourth time, after he brought contraband into the juvenile center. At the dispositional hearing, the trial court orally committed Estes to DYS for a minimum of six months on each of three offenses, and further ordered the commitments to run consecutively.[1]
 {¶ 5} Estes appeals raising the following assignments of error: "I. The trial court violated John Estes' right to counsel and due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, R.C. 2151.352 and Juv.R. 4 and 29. (T.p. 104). II. The trial court erred when it increased John Estes' original commitment to the Department of Youth Services upon a finding that he violated his probation. (T.p. 26, 131). III. John Estes was denied his constitutional rights to due process and equal protection of the law when the trial court increased John's commitment to the Department of Youth Services from six months to eighteen months. (T.p. 26, 131)."
 II. {¶ 6} In his first assignment of error, Estes contends that the trial court failed to either appoint him counsel or obtain a valid waiver of counsel before adjudicating him delinquent and committing him to DYS for his January 2004 probation violation.
 {¶ 7} Estes first argues that R.C. 2151.352 required the trial court to appoint counsel for him because, although his parents were present in the courtroom, they "did not represent or advise him." We disagree.
 {¶ 8} Our society generally recognizes that children do not have the life experience that would assist them in making the best decisions to safeguard their personal and constitutional rights. In re Rodgers (1997), 124 Ohio App.3d 392, 395, citingIn re Gault (1967), 387 U.S. 1, 36; In re East (1995),105 Ohio App.3d 221, 223. Therefore, they are in need of special protection and assistance. To that end, R.C. 2151.352 provides that "[c]ounsel must be appointed for a child not represented by his parent, guardian or custodian." Estes essentially argues that, because his parents did not question witnesses or make a statement to the court on his behalf at the adjudication or disposition hearings, they did not represent his interests.
 {¶ 9} As noted by the State, the record clearly indicates that Estes' parents supported him, wanted him to come home, and were willing to do whatever they could to help the court and the juvenile probation department deal with their son's problems. They were present with Estes to counsel and advise him, and to protect him from the overpowering presence of the law. See Haleyv. State of Ohio (1948), 332 U.S. 596, 600.
 {¶ 10} Parents can adequately represent their child's interests when those interests are aligned with those of the parents and, in that situation, appointment of independent counsel for the child is not necessary. In re Williams,101 Ohio St.3d 398, 2004-Ohio-1500, ¶ 24, citing In re Alfrey,
Clark App. No. 01CA0083, 2003-Ohio-608, ¶ 21. Additionally, we note that the Fifth District Court of Appeals has found no violation of a juvenile's statutory or constitutional right to counsel where the juvenile's grandmother was present at hearing, and the trial court erroneously believed that grandmother had custody of the juvenile. See Douglas v. State (Dec. 6, 1996), Richland App. No. 96CA44. Similarly, the Eighth District Court of Appeals has found the presence of a social worker, serving in the capacity of a juvenile's custodian, nullifies the automatic-appointment-of-counsel provision of the statute. In reSmith (2001), 142 Ohio App.3d 16, 20.
 {¶ 11} Under the circumstances of this case, we conclude that the presence of Estes' parents satisfied the requirements of R.C.2151.352, and, therefore, the trial court was not required to appoint counsel if Estes and his parents validly waived their right to assistance of counsel.
 {¶ 12} Next, Estes argues that he did not validly waive his right to counsel.
 {¶ 13} Juv.R. 4 and R.C. 2151.352 clearly provide a party to a juvenile proceeding with the right to be represented by counsel at all stages the proceedings. We have previously noted that Juv.R. 4(A) and R.C. 2151.352 "go beyond federal and state constitutional requirements to afford parties the right to counsel at all juvenile proceedings, unless such right is intentionally waived." In re Richardson (Aug. 19, 1987), Scioto App. No. 1674.
 {¶ 14} To be effective, a waiver of the right to counsel must be voluntary, knowing and intelligent. State v. Gibson (1976),45 Ohio St.2d 366, paragraph one of the syllabus. The trial court must fully and clearly explain the right to counsel, and the party must then affirmatively waive the right on the record. Inre East supra, at 223. The court's inquiry must encompass the totality of the circumstances before the court can be satisfied that the offender knowingly, intelligently and voluntarily waived the right. In re Johnson (1995), 106 Ohio App.3d 38, 41. When applying the totality-of-the-circumstances test to juveniles, a trial court must give close scrutiny to factors such as a juvenile's age, emotional stability, mental capacity, and prior criminal experience. Id.
 {¶ 15} The record reflects that, at the January 2004 probation violation hearing and the March 2004 dispositional hearing, the trial court advised Estes that he was before the court on an alleged or adjudicated probation violation, and the range of possible punishments for that violation. The trial court advised Estes of his right to have an attorney represent him in the proceedings, and his right to have a court appointed attorney if he could not afford to hire one. Additionally, the trial court notified Estes that if the matter proceeded to trial, he would have the right to present evidence on his own behalf, the right to cross-examine any witnesses called to testify, and the right to remain silent. At both hearings, the court asked Estes if he wished to have an attorney represent him. Estes responded, "No, your honor."[2]
 {¶ 16} Estes argues that the trial court failed to engage him in a meaningful dialogue to determine whether he knowingly, voluntarily, and intelligently waived his right to counsel. In contrast, the State contends that the trial court could rely upon the evidence already in the record to determine whether Estes understood the nature of his right to counsel, and knowingly, voluntarily, and intelligently waived it. Specifically, the State contends that the record reflected that Estes: (1) was 17 years old at the time of the final hearing; (2) had a history of delinquent behavior and extensive prior involvement with the juvenile justice system (in this case and three prior delinquency/unruly cases); (3) was of average to above-average intelligence as evidenced by his previous participation in a talented and gifted program; (4) had supportive and involved parents; and, (5) had struggled with substance abuse.
 {¶ 17} We agree with the State's argument that the trial court could rely upon evidence contained in the record to determine, based on the totality of the circumstances, that Estes knowingly, voluntarily, and intelligently waived his right to counsel. The record clearly reflects that Estes was 17 years old at the time of the hearings at issue, and possessed average to above-average intelligence. It further reflects that he had extensive prior experience with the juvenile court system, and had one or both of his parents present to assist him at every hearing. Therefore, we find that, based upon the totality of the circumstances, Estes knowingly, intelligently and voluntarily waived his right to counsel. Accordingly, we find no merit in Estes' first assignment of error.
 III. {¶ 18} In his second assignment of error, Estes argues that the trial court erred in increasing his original commitment to DYS upon finding that he violated the terms of his probation. Specifically, Estes argues that pursuant to our holding in Statev. McPherson (2001), 142 Ohio App.3d 274, the trial court could not lengthen his suspended commitment by ordering him to serve the three commitments consecutively, instead of concurrently as the court had originally ordered.
 {¶ 19} In McPherson, we held that, when a trial court imposes a prison sentence to punish adult offenders who violate community control sanctions, the sentence cannot exceed the term specified in the notice given to the offender at the sentencing hearing. McPherson at 278, citing State v. Evans (Dec. 13, 2000), Meigs App. No. ME00CA003.
 {¶ 20} In McPherson, we based our holding upon R.C.2929.15(B), which provides that if a court imposes a prison sentence for violation of a community control sanction, that sentence "shall not exceed the prison term specified in the notice provided to the offender at the sentencing hearing pursuant to division (B)[5] of section 2929.19 of the Revised Code." R.C. 2929.19(B)(5) provides that, if the court imposes a community control sanction, the court must notify the offender of the consequences for violating the community control sanction. The statute specifically provides that, at the sentencing hearing, the trial court: "* * * shall indicate the specificprison term that may be imposed as a sanction for the violation
* * *." (Emphasis added.) Thus, in McPherson we determined the statutory sentencing scheme for adult offenders mandated that the trial court notify the offender of the specific prison term that it would impose for a community control violation at the initial sentencing hearing. The Ohio Supreme Court recently adopted this interpretation of R.C. 2929.19(B)(5) and R.C. 2929.15(B) inState v. Brooks, 103 Ohio St.3d 134, 2004-Ohio-4746, paragraph two of the syllabus.
 {¶ 21} Here, Estes argues that the trial court erred in failing to apply the statutory sentencing scheme for adult community control violators in his juvenile delinquency matter. We disagree.
 {¶ 22} The Eighth District Court of Appeals has rejected a similar attempt to apply the notice provisions of R.C. 2929.15(B) in the juvenile context. See In re C.H., Cuyahoga App. No. 79329, 2002-Ohio-486. The court found that R.C. 2151.355 provides a range of dispositions from probation to DYS commitment, and omits any mention of the rights afforded adult offenders by R.C.2929.15 and R.C. 2929.19. Accordingly, the Eighth District concluded that "* * * state legislators intentionally denied juveniles the criminal right at issue." Id. Additionally, that court noted that the juvenile failed to cite any constitutional basis for the statutory right that would justify extending the right to juveniles in delinquency proceedings. Id.
 {¶ 23} As the Eighth District noted in In re C.H., the Ohio Supreme Court upheld the prior adult probation scheme (which is similar to the juvenile probation scheme at issue here) against a constitutional double jeopardy challenge. Id., citing State v.McMullen (1983), 6 Ohio St. 3d 244. In McMullen, the Supreme Court held that a trial court may impose a longer sentence after revocation of an offender's probation without violating the offender's constitutional right against double jeopardy.McMullen at paragraph one of the syllabus. There, the Court reasoned that: "By placing a defendant on probation, the judge has afforded the benefit of a reduced sentence conditioned upon the defendant's efforts to reform. A defendant has no expectation of finality in the original sentence when it is subject to his compliance with the terms of his probation. In the event of a violation of probation, the original sentence does not become final but is subject to modification within the standards of state law." Id. at 246.
 {¶ 24} The Ohio Supreme Court later acknowledged a distinction between probation imposed in lieu of execution of sentence and probation granted after a term of incarceration. The Court held that, when a trial court grants an offender probation after the offender has served a term of incarceration, the imposition of a new and more severe sentence would constitute multiple punishments for the same offense. State v. Draper
(1991), 60 Ohio St.3d 81, 83.
 {¶ 25} Based upon the foregoing, we conclude that the rights granted to adult offenders by R.C. 2929.15 and R.C. 2929.19 are not applicable to juveniles in delinquency proceedings. Additionally, the record reflects that Estes had not served any portion of his suspended commitment before the trial court committed him to DYS for his probation violation. Accordingly, upon the authority of McMullen and Draper, supra, we perceive no error in the trial court's imposition of a more severe commitment upon Estes' probation violation. Accordingly, we overrule Estes' second assignment of error.
 IV. {¶ 26} In his third assignment of error, Estes argues that the trial court deprived him of his right to equal protection of the law by increasing his minimum commitment upon finding that he violated the terms of his probation.
 {¶ 27} The guarantee of equal protection of the laws means "no person or class of persons shall be denied the same protection of the law which is enjoyed by other persons or other classes in the same place and under like circumstances." Statev. Gledhill (1984), 13 Ohio App.3d 372, 373. (Emphasis added.) Equal protection does not prohibit the state from distinguishing between citizens, but permits only distinctions that are not arbitrary or invidious. Avery v. Midland County, Texas (1968),390 U.S. 474, 484.
 {¶ 28} Here, Estes contends that juvenile delinquents committed to the custody of DYS and adults sentenced to incarceration are like classes under like circumstances and, therefore, the courts should treat them similarly. We disagree.
 {¶ 29} Courts have long recognized that the State's interest in preserving and promoting the welfare of the child justifies treating juveniles differently than adults in a variety of contexts. See, In re Cundiff (Jan. 13, 2000), Franklin App. No. 99AP364. The United States Supreme Court has explained, "[f]rom the inception of the juvenile court system, wide differences have been tolerated indeed insisted upon between the procedural rights accorded to adults and those of juveniles." In re Gault (1967),387 U.S. 1, 14. While certain constitutional protections afforded adults, including the right to counsel, the privilege against self-incrimination, and freedom from double jeopardy, are applicable to juvenile proceedings, other protections, including trial by jury, are not. See, Schall v. Martin (1984),467 U.S. 253, 263; McKeiver v. Pennsylvania (1971), 403 U.S. 528, 545;In re Agler (1969), 19 Ohio St.2d 70, 78. The United States Supreme Court has expressly recognized that "the Constitution does not mandate elimination of all differences in the treatment of juveniles." Schall, supra at 263, citing McKeiver, supra. In fact, the Supreme Court has expressly recognized that the "acceptance of juvenile courts distinct from the adult criminal justice system assumes that juvenile offenders constitutionally may be treated differently from adults." Bellotti v. Baird
(1979), 443 U.S. 622, 635.
 {¶ 30} "Evidence that the minor committed acts that would constitute a crime if committed by an adult is used only for the purpose of establishing that the minor is delinquent, not to convict him of a crime and to subject him to punishment for that crime." State v. Weeks (1987), 37 Ohio App.3d 65, 67, citingIn re Skeens (Feb. 25, 1982), Franklin App. Nos. 81AP882 and 81AP883. The principle underlying the juvenile justice system is to "combine flexible decision-making with individualized intervention to treat and rehabilitate offenders rather than to punish offenses." In re Anderson (2001), 92 Ohio St.3d 63, 65, citation omitted. Although juvenile delinquency laws feature inherently criminal aspects, the Ohio Supreme Court has recognized that the overriding purpose of the juvenile system is "to provide for the care, protection, and mental and physical development of children, to protect the public from the wrongful acts committed by juvenile delinquents, and to rehabilitate errant children and bring them back to productive citizenship, or, as the statute states, to supervise, care for and rehabilitate those children." In re Caldwell (1996),76 Ohio St.3d 156, 157, citing R.C. 2151.01. Accordingly, we find that juveniles adjudicated delinquent and adults convicted of a crime are not groups that are similarly situated. See In re Vaughn
(Aug. 13, 1990), Butler App. No. CA89-11-162; In re Cundiff,
supra. Washington App. No. 04CA11 15.
 {¶ 31} Estes urges us to apply a strict scrutiny analysis to this matter. He argues that laws that impinge upon an individual's fundamental right to liberty must promote a compelling governmental interest. However, it is the nature of the conduct that resulted in the deprivation of liberty that determines the level of scrutiny utilized by the court. See, e.g., State v. Strailey (Sept. 25, 1998), Lake App. No. 97-L-227, citing State v. Ward (1993), 92 Ohio App.3d 631, 633. Here, Estes does not argue, and we decline to hold, that he has a protected interest in violating the terms of his probation by bringing contraband into the juvenile center. Further, as the Twelfth District Court found in Vaughn, supra, "* * * juveniles have never been treated as a suspect class and legislation aimed at juveniles has never been subjected to the test of strict scrutiny." In re Vaughn, supra. Accordingly, we apply the rational basis test, upholding the distinction between juveniles adjudicated delinquent and adults convicted of a crime if it is rationally related to a legitimate government objective.
 {¶ 32} The goals of the juvenile laws are to provide for the care, protection and physical development of children, to protect the public interest in removing the consequences of criminal behavior and the taint of criminality from children committing delinquent acts, and to institute a program of supervision, care and rehabilitation. R.C. 2151.01. These are, without dispute, legitimate governmental objectives. Here, requiring the court to notify adjudicated delinquent juveniles, at the initial disposition hearing, of the exact sentence that the court will impose for a probation violation would deprive the court of the flexibility that is the hallmark of the juvenile justice system. Accordingly, we overrule Estes' third assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that costs herein be taxed to the appellant.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Harsha, J.: Concurs in Judgment Only.
Abele, J.: Concurs in Judgment and Opinion.
[1] We note that in journalizing its oral ruling, the trial court failed to specify the minimum commitment for the third offense. However, because neither party addresses this issue, we do not reach it here.
[2] Crim.R. 44(C) requires a written waiver of the right to counsel for serious offenses involving adults. The record does not show that Estes signed a written waiver. However, we do not reach the question of whether the adult requirement applies to juveniles because neither party has raised this issue on appeal.