I respectfully dissent. Further, I renew the concerns outlined in my dissent in In re Slider, supra. I do not see any abuse of discretion in the record below. In this case, the majority opinion characterizes the father's statements at the initial plea hearing as "statements against Bostwick's penal interests" and I cannot conclude the same.
The statements at issue were made at Bostwick's first hearing, where the child was represented by counsel. Because no delinquency finding existed at that time, and because no permanent commitment was made to the Ohio Department of Youth Services (DYS), the child's penal interests were not in jeopardy. Further, the father's statement that "I think he is better off where he's at," referring to his child's temporary detention at the Juvenile Detention Center may have very well been true and in the best interests of the child's safety and well-being.
I also note the record reveals the juvenile court permitted the child's release from detention on two occasions for treatment by an outside physician. These events are unlikely to occur in DYS and demonstrate the court's ability to act in the best interests of the child, even absent appointment of a guardian ad litem.
When a juvenile court makes an initial determination during a detention or shelter care hearing, it is guided by Rule 7(A)(1) of the Ohio Rules of Juvenile Procedure, which states in part: "A child taken into custody shall not be placed in detention or shelter care prior to final disposition unless any of the following apply: (1) Detention or shelter care is required: (a) to protect the child from immediate harm orthreatened physical or emotional harm; or (b) to protect the person or property of others from immediate or threatened physical or emotional harm; (2) The child may abscond or be removed from the jurisdiction of the court." (Emphasis added.)
During the detention hearing the court, pursuant to Juv. R. 7(F)(3), may consider "any evidence, including the reports filed by the person who brought the child to the facility and the admissions officer, without regard to the formal rules of evidence."
In my view, the court below did not abuse its discretion in this case when considering the above Rules in conjunction with R.C. 2151.281(A)(2) and Juv. R. 4(B)(2). The trial court is in the best position to view the parties and make findings regarding the best interests of this child with reference to any initial temporary detention. In this case, the underlying charge, combined with the statements of the child's father, indicated an immediate concern for this child's safety.
The statements of Bostwick's father were not adverse to his child's penal interests when considering that any confinement, at the point in time the statement was made, was temporary and conceivably in the best interests of the child. This is especially true when considering the totality of the circumstances and the severity of the delinquency charges pending before the court. Also, unlike many other plea and detention hearings, this child was represented by counsel. Lastly, at the dispositional hearing, the father did not strongly advocate for the placement of his son in DYS. This failure indicates that no conflict existed between him and his son.
The majority's use of the holding of In re Howard, (1997)119 Ohio App. 3d 201, 695 N.E.2d 1, is noteworthy and distinguishable. In Howard, the court properly noted "the problem is in determining what is meant by `conflict of interest' such that a guardian ad litem must be appointed."
The court also stated that such conflicts are "more apparent in dependency, neglect, and abuse proceedings than in delinquency cases." Id. at 206.
As a threshold issue in the case below, I am not convinced that the conduct and statements of Bostwick's father at the initial hearing, where Bostwick was represented by counsel, affirmatively demonstrated a conflict of interest. If such a conflict is not readily apparent, the subsequent inquiry discussed in Howard is unnecessary. Additionally, the facts of Howard are different than those involved in this case. InHoward, the court adjudicated the child delinquent, and at the dispositional hearing, the child's mother indicated the child should be sent to DYS and explained her reasons for the same.
Further, the court in Howard aptly stated: "Parents are not compelled to advocate what the child wants if they believe such a result would not be in the child's best interests. There was nothing in this record to suggest that Howard's mother was acting other than in Howard's best interests." Id. at 207. The court then went on to hold that "we find no error in this case in the failure to appoint a guardian ad litem." Id at 207.
In the case below, the conduct on which the majority relies to reverse the delinquency finding occurred during the initial plea and detention hearing unlike the disposition hearing in Howard. Further, Bostwick's father and Howard's mother were never shown to have acted in any manner other than in the best interests of their children. As such, the Howard
holding is factually different because in that case the mother was advocating for a DYS commitment, and the court ruled that no error existed by the failure of the trial court to appoint a guardian ad litem.
In the case sub judice, the father's comments at the first hearing expressed to the court a genuine concern for his child's well being and safety because of the child's argumentative nature and propensity to run away. These statements are not in the same time, place, or manner as those in Howard, nor are they asking for a permanent commitment to a juvenile penal institution. With that in mind, I cannot conclude that error, particularly error that rises to the level of arbitrary, capricious or unconscionable, occurred below. Thus, if failure to appoint a guardian ad litem was not error in the Howard case, it should not be adjudged error or particularly unreasonable, arbitrary or unconscionable conduct in this case.
In this case, a review of the transcript reveals the trial court found that the child was better off being placed in temporary detention and in the permanent custody of DYS. There is simply nothing in the record suggesting that Bostwick's father was acting outside the realm of his child's best interests; furthermore, he made his statements at a stage in the proceedings during which his son was represented by counsel. Nor does the record indicate a guardian ad litem would have safeguarded interests of the child not advanced by his father or counsel.
The facts of the other cases cited by the majority opinion are easily distinguishable. For example, In re Sappington (1997),123 Ohio App.3d 448, 704 N.E.2d 339, involved a delinquency proceeding where the father encouraged his son to plead admission (guilty) and proceed without counsel at the plea hearing. In the case of In reSpradlin (2000), 140 Ohio App.3d 402, 747 N.E.2d 877, the child's custodian, who was his grandfather, had an unruly complaint pending while going to trial in a subsequent delinquency matter. And lastly, In reHowell (1991), 77 Ohio App.3d 80, 604 N.E.2d 92, was an adoption case involving the termination of parental rights, which inherently suggests a stronger conflict between a parent and child.
Admittedly, the interplay between Juv. R. 7, R.C. 2151.281(A)(2) and Juv. R. 4(B)(2) does not expressly provide for the required analysis in determining if and when to appoint a guardian ad litem. Further, courts often echo the sentiment that they will not "write a bright-line rule that any time a parent speaks against a child's penal interest, it is not in the child's best interest." See, Howard at 207.
However, with our decisions in this case and in In re Slider, supra, we have intrinsically warned juvenile courts to appoint guardians in any case that may have a "hint of conflict," otherwise reversal may be in order. In essence, the astute juvenile court judge or magistrate now should appoint a guardian ad litem at the outset in all delinquency cases to foreclose reversal of serious cases such as the one below.[1]
Practically speaking, an advancing argument is that juvenile judges or magistrates would be well served by appointing a guardian ad litem in all serious cases. In my view, this result was not intended by the statute or the juvenile rules, but rather more of a case-by-case analysis.
This court, with its recent line of cases, conceivably announces a bright line rule that when a child appears for an initial plea in a delinquency matter, with counsel and a parent present, or anything less, a guardian ad litem should be appointed to protect the best interests of the child, especially if the parent says anything that may be interpreted against any interests of the child. A solution to this dichotomy could be to restrict the statements made by parents, guardian or custodians by giving them Miranda-like warnings at all hearings.
This solution, however, would make the court's initial detention hearings much more difficult because vital information necessary to make appropriate Juv. R. 7 determinations would be lacking. It also would prevent the juvenile court from obtaining information relevant to the "best interests" of the child at that time in the proceedings.
As such, it seems we are blurring the lines between the "child's best interests" and the child's "best legal interests". See In re Smith
(1990), 142 Ohio App.3d 16, 753 N.E.2d 930, citing, as examples, In reSappington, In re Howard, and In re Spradlin. In Smith, the court noted, "we view this distinction with trepidation, for it seems to us ill conceived for the juvenile law to subordinate blindly a child's best interests to that of the child's best legal interests. It is a basic premise of juvenile law that parents, or the state if need be, are charged with directing the lives of children." Id. at 21.
Further, in Schall v. Martin (1984), 467 U.S. 253, 104 S.Ct. 2403, the United States Supreme Court stated: "Children, by definition, are not assumed to have the capacity to take care of themselves. They are assumed to be subject to the control of their parents, and if parental control falters, the State must play its parens patriae."
Lastly, the court rightly concluded that "no attempt at juvenile rehabilitation would be complete without instilling in the child the idea the she alone bears responsibility for her actions. A parent, guardian, or custodian is often the best person to make that point . . . [j]uvenile court should not be the place where children learn they can finesse the system." Smith at 22, 23.
At this juncture, it seems appropriate to review our words from In reEstes, Washington App. No. 04CA11, 2004-Ohio-5163, where we stated: "The principle underlying the juvenile justice system is to combine flexible decision-making with individualized intervention to treat and rehabilitate offenders rather than punish offenses."
We should also be mindful of our prior holding that "we decline to adopt any hard and fast rule that requires appointment of a guardian in every case." In re Wilson, Washington App. No.: 04Ca26, 2004-Ohio-7276.
In my view, a juvenile court works best when given flexibility to handle those difficult situations of appointing or not appointing a guardian ad litem. As such, juvenile court judges and magistrates are continually in the best position to observe the parties, hear their voices, and know the dynamics of their individual situations. Thus, armed with that factually sensitive knowledge, they act according to the fundamental and historic principles of juvenile law, unlike appellate court judges who review their decisions without the same purview. I believe our standard of review requires significant deference to juvenile courts in this area. Also, it is important not to adopt hard and fast rules in these situations and give the needed flexibility to the juvenile court, where it belongs. However, our recent decisions arguably indicate otherwise.
In the final analysis, the child below had multiple layers to protect his "best interests" thereby fulfilling the traditional role of any absent guardian ad litem. The child had his "natural" guardian ad litem, his father, present, as well as his counsel, both of which appeared at all stages in the proceedings. Besides these two capable individuals, the juvenile court via the doctrine of parens patriae can, and frequently does, act to protect the child's best interests. As such, a fourth individual appointed as a guardian ad litem would have been an unnecessary duplication of services. Further, if any error existed below, it was harmless in my view.
Based on the foregoing, I cannot say the court below acted unreasonably, arbitrarily, or unconscionably by not appointing a guardian ad litem. I would affirm the trial court's delinquency finding of rape and its subsequent commitment of the child to DYS.
Thus, I dissent.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND THE CAUSE REMANDED and that costs herein be taxed to the appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion.
McFarland, J.: Dissents with Dissenting Opinion.
[1] Additionally, more frequent appointment of a guardian ad litem will increase the costs associated with the prosecution of juvenile cases at a time when the Ohio legislature and County Commissioners are lacking funds to pay court appointed legal fees. See recently passed H.B. 66 which contains language amending R.C. 2151.352 limiting the right to counsel at government expense.