OPINION
Sean Minnich is appealing the judgment of the Montgomery County Common Pleas Court Juvenile Division declaring his two biological children and three stepchildren to be dependent and awarding permanent custody to Montgomery County Children's Services (hereinafter "CSB").
In February 20, 1996, CSB filed complaints on three of Mrs. Roxanna Minnich's children, Carol, David, and Dustin Gau, alleging they were dependent children. The alleged father of these children was David Gau, Sr., although paternity has never been established. Mrs. Minnich already had three other children who were removed from her care. On March 25, 1996, after a hearing was held, the Gau children were found to be dependent and CSB was awarded temporary custody. On December 12, 1996, CSB filed for permanent custody of the Gau children. A hearing on this issue was initially scheduled for January 15, 1997 but was continued until June 3, 1997.
On May 9, 1997, Sean Minnich and Roxanna Minnich (hereinafter "Sean" and "Roxanna") had a son named Kyle, who was extremely premature. On May 28, 1997, CSB filed a complaint seeking to have Kyle Minnich declared a dependent child and placed temporarily in CSB's care. The June 3, 1997 hearing was continued to August 27, 1997 when a hearing on temporary custody for Kyle and permanent custody on the Gau children was held. On September 4, 1997, the court found Kyle to be a dependent child and temporary custody was given to CSB. The Gau children remained in the temporary custody of CSB.
On January 7, 1998, CSB filed motions to have the dispositions changed from temporary custody to permanent custody for Kyle and the Gau children. A hearing on these issues was scheduled for February 6, 1998. The guardian ad litem (hereinafter "GAL") filed a report on all four children on January 27, 1998. The February hearing was again continued to May 19, 1998. The record is unclear as to what occurred in May, but on August 28, 1998, CSB once again filed motions for permanent custody on the Gau children and Kyle Minnich and received a hearing date of November 13, 1998.
On August 14, 1998, Sarah Minnich was born six weeks premature. On January 8, 1999, CSB filed a complaint alleging Sarah was a dependent child and requesting permanent custody. The November 13, 1998 hearing was continued until February 1, 1999 and the complaint for custody of Sarah was joined with those for Kyle Minnich and the Gau children. On February 1, 1999, the GAL filed a supplemental report on all five children. On this date and May 14, 1999, hearings on the motions for permanent custody of the five children were held before Magistrate White. Further hearings were held on March 14, 2000, April 26, 2000, and June 5, 2000 before Magistrate Herdman as Magistrate White had left the position. On July 18, 2000, Carol Gau, David Gau, Dustin Gau, Kyle Minnich, and Sarah Minnich were all committed to the permanent custody of CSB. On October 3, 2000, Sean filed objections to the magistrate's decision with the trial court. The trial court overruled Sean's objections on November 29, 2000. Sean filed this timely notice of appeal.
Sean asserts the following four assignments of error:
 1. THE TRIAL COURT ERRED BY FAILING TO CONSIDER THE WISHES OF THE MINOR CHILDREN IN DETERMINING WHETHER THE BEST INTERESTS OF THE CHILDREN WOULD BE SERVED BY GRANTING PERMANENT CUSTODY TO CHILDREN'S SERVICES BUREAU.
 2. THE TRIAL COURT ERRED BY PERMITTING MORE THAN ONE TRIER OF FACT TO HEAR TESTIMONY THEREBY MAKING IT IMPOSSIBLE TO REASONABLY ISSUE FINDING OF FACTS {SIC} AND CONCLUSIONS OF LAW.
 3. THE TRIAL COURT ERRED BY FAILING TO ISSUE FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR EACH INDIVIDUAL CHILD.
 4. THE TRIAL COURT ERRED BY FAILING TO FIND BY CLEAR AND CONVINCING EVIDENCE THAT SEAN MINNICH COULD NOT PARENT HIS CHILDREN.
Appellant's first assignment of error:
Sean argues that the GAL only asked the two oldest children, Carol and David Gau, where they wanted to stay, and that this was insufficient questioning to determine the children's wishes. Also, Sean argues the GAL's report was not timely filed. We disagree.
R.C. 2151.414(C) requires a guardian ad litem to submit a written report either prior to or at the time of the permanent custody hearing. See In re Isaac v. Montgomery Cty. Children's Servs. Bd. (Dec. 14, 1994), Montgomery App. No. 14200, unreported at *9. R.C. 2151.414(D)(2) provides that the trial court must consider the wishes of the children either directly or through a guardian ad litem. In considering the child's wishes, the trial court should give due regard to the maturity of the children. See In re Staten (Oct. 23, 1998), Montgomery App. No. 17146, unreported.
Sean first argues that the GAL did not comply with R.C. 2151.414(C) because he did not file his report until the morning of the beginning of the trial. However, as this was prior to the time of the permanent custody hearing, the GAL's report was filed in time and complied with R.C. 2151.414(C). Further, this was only a supplemental report as the GAL had filed many reports on this case since 1996.
Also, Sean argues that the court failed to comply with R.C.2151.414(D)(2) as the GAL did not sufficiently determine the wishes of the children. The GAL's report stated that he asked each of the children separately and privately how they felt about being in foster care and whether they wished to return to their mother's care. Despite having visited with their mother the previous day, David and Carol clearly expressed that they wished to stay in foster care. Dustin, who the GAL admitted was hard to understand, expressed to the GAL that he wished to remain with the foster parents. At the time of the report, the GAL found Sarah, six months old, and Kyle, less than two years old, to be too young to express their wishes regarding custody. Additionally, Sarah and Kyle have resided with foster parents since birth and according to the GAL do not have a bond with either Roxanna or Sean. Contrary to Sean's assertion, the GAL's questioning of the children was sufficient to determine the children's wishes, considering their maturity levels. The trial court did not violate R.C. 2151.414(D)(2) because Sarah and Kyle were too young to express their wishes. Sean's first assignment of error is without merit and overruled.
Appellant's second assignment of error:
Sean argues that the trial court erred by accepting the magistrate's decision when two different magistrates had heard the case. We disagree.
Civ.R. 63(B) states:
 [i]f for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after the verdict is returned or findings of fact and conclusions of law are filed, another judge designated by the administrative judge * * * may perform those duties; but if such other judge is satisfied that he cannot perform those duties, he may in his discretion grant a new trial.
If a trial court judge becomes disabled following the beginning of the presentation of evidence and cannot continue the trial and has yet to have issued findings of fact or conclusions of law, absent unanimous consent of the parties a new trial is required. Arrow-Hart, Inc. v. Philip Carey Co. (1977), 552 F.2d 711, 713. However, Civ.R. 63 does not apply to magistrates. Hartt v. Munobe (1993), 67 Ohio St.3d 3, 8, reconsideration denied (1993) 67 Ohio St.3d 1457. The Supreme Court has held that two magistrates may be utilized to hear a case because the procedural safeguards provided in Civ.R. 53 protect the interests of the parties. Id.
Civ.R. 53 provides that a trial court may appoint a magistrate to conduct a hearing and then submit proposed findings of fact and conclusions of law to the trial court. A party may file objections to the magistrate's report, which the trial court must rule on before entering its own judgment. Civ.R. 53. The trial court conducts a de novo review of the facts and conclusions in the magistrate's report before entering its own judgement. DeSantis v. Soller (1990),70 Ohio App.3d 226, 232. The Supreme Court has stated, "[r]ule 53 contemplates that a [magistrate] shall aid the court in the expedition of the court's business and not be a substitute for the functions of the court." Normandy Place Assoc. v. Beyer (1982), 2 Ohio St.3d 102, 105. As the trial court is the ultimate fact finder, where a magistrate is unable to preside over all of the hearing and a party is not prejudiced by having different individuals preside over the hearings, there is no error. In re Johnson (1995), 106 Ohio App.3d 38.
Sean asserts that having Magistrate White preside over the first two hearings and having Magistrate Herdman preside over the remaining three hearings was erroneous. However, since the magistrate is not the ultimate fact finder, having different magistrates at different hearings is not an error. Sean filed objections with the trial court and the trial court conducted a de novo review of the magistrate's recommendation. Thus, the trial court was free to modify, reject or adopt the magistrate's decision. Therefore, we find no error in two different magistrates presiding over the first half and the second half of the hearings. Sean's second assignment of error is without merit and overruled.
Appellant's third assignment of error:
Sean asserts that the trial court erred by issuing findings of fact and conclusions of law for the children as a unit rather than for each child. We disagree.
A trial court must "make an independent determination of the relevant criteria in R.C. 2151.414(B) and all other relevant evidence independently for each child in a multichild {sic} permanent custody proceeding." In re Hiatt (1993), 86 Ohio App.3d 716, 725. However, the Hiatt court stated that "how a parent mistreats another child in the household [may] be very relevant to the permanent custody determination of a child that is not mistreated in the same manner." Id. The Hiatt court did not require that the judgment entry contain an independent determination on each child, but rather found that where the record demonstrated that the trial court had considered the relevant criteria and evidence for each child individually, no error was present. Id. at 726. Further, if a parent failed to request specific findings of fact and conclusions of law under R.C. 2151.414(C), he cannot complain that the trial court did not give an independent determination on each child in the judgment entry. Id. See In re Covin (1982), 8 Ohio App.3d 139.
Sean asserts that the trial court did not consider each child individually, particularly his biological children, Kyle and Sarah. Yet, the transcript and the judgment entry demonstrate that the court did consider each child separately. As for Sean's assertion that Sarah and Kyle were considered as a group with the Gau children, the magistrate's judgment entry discusses Kyle and Sarah separately from the Gau children. The entry comments on the individual problems of each child, such as that Kyle must attend special school four days a week while Sarah only attends twice a week and that Sarah has breathing problems which is enhanced by Sean's smoking. Additionally, the transcript provides ample evidence of each child's individual difficulties, such as Dustin's mental retardation, Carol's improved communication skills, David's continued communication problems, Kyle's communication and poor motor skills development and his physical disabilities, and Sarah's slow motor skills and classes she attends to improve them. Therefore, sufficient evidence exists in the record to find that the magistrate and the trial court, which conducted a de novo review, considered each child individually. Even though the magistrate did not make specific findings of fact and conclusions of law for each child individually, he was not required to do so, particularly since Sean failed to request them. Sean's third assignment of error is without merit and overruled. Appellant's fourth assignment of error:
Sean argues that since the basis for the motion to grant CSB permanent custody was the parents' failure to complete their case plan and the case plan was ex parte amended during the trial, it was impossible for the parents to have failed to comply with the case plan. We disagree.
In order for a juvenile court to terminate a parent's rights and grant permanent custody of a child who was not abandoned nor orphaned to a moving agency, the court must find by clear and convincing evidence that the grant of permanent custody is in the best interests of the child and that the child either cannot or should not be placed with either parent within a reasonable time. R.C. 2151.414(B)(1), see also, In re William S. (1996), 75 Ohio St.3d 95, 99. The effect on a parent of terminating his or her rights is prohibited from consideration by the juvenile court. R.C. 2151.414(C). Clear and convincing evidence is that evidence "which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." In re Weaver (1992), 79 Ohio App.3d 59, 64; see also, In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368; In re Meyer (1994), 98 Ohio App.3d 189,195. A reviewing court may not reverse a lower court's judgment if it is "supported by some competent, credible evidence going to all the essential elements of the case." State v. Schiebel (1990),55 Ohio St.3d 71, 74, certiorari denied (1991) 499 U.S. 961. In determining whether the grant of permanent custody is in the best interests of the child, the court shall consider all relevant factors, including, but not limited to:
 [1] The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
* * *
[2] The custodial history of the child;
 [3] The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
R.C. 2151.414(D).
On the issue of the best interests of the child, clear and convincing evidence was presented which supported that the children's best interests were served by their placement in CSB's permanent custody. Sean's children, Sarah and Kyle, do not have a bond with him as they have been in foster care since birth. (GAL's report). In contrast, Sarah and Kyle have a strong bond with their foster parents whom Sarah has been with since birth and Kyle since he was a year old. (4-26-00 Tr. 36, 56). Both Sarah and Kyle have special needs due to their developmental delays resulting from their premature birth. (4-26-00 Tr. 37-41, 57-58). The foster parents have successfully met these children's needs, taking them to special classes, doctors in Cincinnati, and working with them at home. (4-26-00 Tr. 47-51, 56, 58-59, 61-62). Further, Sarah and Kyle's foster parents have expressed an interest in adopting the children if CSB is granted permanent custody. (4-26-00 Tr. 59).
Additionally, the Gau children have been in foster care since 1996 and also have no bond with their stepfather, Sean. Rather the Gau children have a strong bond with their foster parents and each of the Gau children expressed a desire to remain with their foster parents. (GAL's report). The Gau children also have special needs stemming from neglect when they were very young, particularly Dustin who is mentally retarded. (2-1-99 Tr. 22-25). The Gau children's foster parents are also meeting their special needs and while in their care, the children are improving in their communication and motor skills. (4-26-00 Tr. 16, 20-27). The Gau children's foster parents definitely wish to remain their foster parents until the children are eighteen and are considering adopting the children. (4-26-00 Tr. 29). Moreover, Sean has failed to involve himself with his children's physicians or educators and he fails to recognize the significance of his children's physical and mental difficulties. (2-1-99 Tr. 92). Thus, the evidence clearly and convincingly supported the conclusion that CSB obtaining permanent custody was in the children's best interest.
As for the second requirement that the child, "cannot be placed with either of his parents within a reasonable time or should not be placed with his parents," the court must find one of eight listed factors is present. R.C. 2151.414(E). One factor enumerated is:
 The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]
R.C. 2151.414(E)(4). The existence of only one factor will support a court's determination that the child cannot be placed with either parent within a reasonable time. William S., supra.
Sean has been involved with CSB for approximately three years and has failed to demonstrate a continuous commitment toward his children. (2-1-99 Tr. 85). Sean argues that the case plan was improperly amended during the trial and therefore, he could not have failed to comply with the amended case plan. However in the several years that Sean has been involved with CSB, several case plans have been in effect and each have always listed as an objective that Sean and his wife continuously support and visit their children. Sean has not continuously attended his weekly visitation with his children, even though the importance of the visits has been repeatedly explained to both parents. (2-1-99 Tr. 111; 5-14-99 Tr. 40, 47; 4-26-00 Tr. 80, 90-92, 119). Additionally, Sean has only attended his children's ECIC classes, where parents participate and are trained to care for their special needs children, on one occasion in three years. (2-1-99 Tr. 69; 4-26-00 Tr. 90, 119). This amounts to competent, credible evidence that Sean failed to support, visit, or communicate with his children and thus, that neither Carol, David, Dustin, Sarah, or Kyle can or should be placed with Sean in a reasonable time. Therefore, clear and convincing evidence supported terminating Sean's parental rights and granting permanent custody of the children to CSB. Sean's fourth assignment of error is without merit and overruled.
The judgment of the trial court is affirmed.
WOLFF, P.J. and BROGAN, J., concur.