OPINION.
Appellant Tajuan Pope appeals from his commitment to the Ohio Department Youth Services ("DYS") ordered by the juvenile court on April 9, 2001, pursuant to his adjudication as a delinquent child. In his first and third assignments of error, Pope contends that his procedural due-process rights, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, were violated because the juvenile court magistrate adjudicated him delinquent at a time when he was incompetent. We do not reach this issue because we hold that the magistrate did not comply with Juv.R. 29(D) before accepting Pope's admission to the allegations contained in the complaint. Therefore, as he argues in his second assignment of error, his admission was not entered knowingly, intelligently, and voluntarily.
On May 15, 2000, Pope, then sixteen years old, along with several associates, planned to rob a pizza deliveryman. Although Pope had left the scene before the robbery, his associates used what was later learned to be a BB gun in their theft of keys and $10 from the deliveryman. On March 16, 2001, Pope appeared with his court-appointed counsel before the juvenile court magistrate, charged with the aggravated robbery of the deliveryman and with a firearm specification. The state subsequently reduced the offense from aggravated robbery to robbery and dismissed the firearm specification and an unrelated disorderly-conduct charge. The state and Pope then negotiated a plea agreement by which he entered an admission to the reduced offense of attempted robbery.
At the hearing, Pope did not file a suggestion of incompetency. His counsel merely informed the magistrate, "Your Honor, mom has has indicated to me that he has some, I think, mental issues at this stage. She'd like to be able to drop some medicine off * * *." The magistrate then adjudicated Pope delinquent, continued the case, and sent the matter to the juvenile court judge for disposition.
At a hearing on March 26, 2001, the court conducted an extensive hearing to consider the alternatives for Pope's placement. The court was apprised by Pope's counsel that Pope had a bipolar disorder. His medical history included hospitalization, referrals to treatment programs, and treatment by different psychiatrists and psychologists. The court's probation department recommended a continuance to investigate the feasibility of Pope's placement in the Bridges Program. At the conclusion of the hearing, the court ordered a psychological evaluation by the court clinic and continued the hearing in progress.
At an April 9, 2001, hearing, Pope's probation officer informed the court that the Bridges Program had no space available for Pope. The report of the psychiatric evaluation ordered by the court noted that Pope had a history of hyperactivity stemming from a bipolar disorder. His medical history also included manic episodes and psychotic features, including auditory and visual hallucinations. The psychiatric evaluation concluded, "If the diagnosis I and previous psychiatrists have rendered is correct, Mr. Pope will need to undergo long-term treatment — perhaps for the rest of his life — to control the symptoms of his severe mood disorder." The clinic psychiatric evaluation also stated,
 Mr. Pope has incurred 27 charges in Juvenile Court since 1995. Fourteen of these resulted in delinquency findings, and two charges resulted in unruliness findings. Mr. Pope knew that he had recently accepted a plea bargain in Juvenile Court in which he admitted guilt in an attempted robbery charge. He was not clear about the full implications of this, but did seem able to understand my explanation of his current legal situation. [Emphasis added.]
 At the hearing Pope denied that he had been involved in the attempted robbery. Still, his counsel did not suggest to the court that Pope was incompetent, and the court did not refer him for a competency evaluation pursuant to Juv.R. 32(A)(4).
The record demonstrates that the court struggled to find a program that could address Pope's mental disorder, but ultimately determined that no available alternative program was adequate. Therefore, the court concluded that, because Pope was a danger to himself and to others, the only option was to commit him to DYS for an indefinite period of six months to age twenty-one. The court recommended his placement in Belmont Pines, the DYS psychiatric unit. The court also stated that, if space became available for Pope in the Bridges Program at the end of June, he should be placed there.
Juvenile court proceedings "`must measure up to the essentials of due process and fair treatment.'" McKeiver v. Pennsylvania (1971), 403 U.S. 528,533-534, 91 S.Ct. 1976, 1980-1981, quoting Kent v. United States (1966),383 U.S. 541, 562, 86 S.Ct. 1045, 1057. This court has repeatedly observed that, before a juvenile can be adjudicated delinquent upon an admission to the allegations of a complaint, Juv.R.29(D) imposes an affirmative obligation upon the magistrate to make certain determinations on the record. See, e.g., In re Etter (1998), 134 Ohio App.3d 484, 488,731 N.E.2d 694, 697. Thus, Juv.R. 29(D) prohibits the magistrate from accepting an admission unless the magistrate has addressed the child personally and has determined (1) that the admission is voluntary and made with the understanding of the nature of the allegations and the consequences of the admission, and (2) that the child understands that, by admitting to the facts, he or she is waiving the right to challenge witnesses and evidence against him or her, the right to remain silent, and the right to introduce evidence at the adjudicatory hearing.
Because an admission waives the juvenile's right to challenge the allegations in the complaint, the procedure under Juv.R. 29(D) for accepting an admission is deemed analogous to a guilty plea entered in a criminal proceeding pursuant to Crim.R. 11(C). See In re Christopher R. (1995), 101 Ohio App.3d 245, 247, 655 N.E.2d 280, 282. Therefore in proceedings pursuant to Juv.R.29(D), as in proceedings pursuant to Crim.R. 11(C), the record must adequately demonstrate that the juvenile has received sufficient information to make a knowing, intelligent, and voluntary admission. See In re Etter, 134 Ohio App.3d at 698,731 N.E.2d at 697.
In a criminal context, before accepting a guilty plea, the court must personally address the adult defendant and ensure that he or she has been "meaningfully informed" of those constitutional rights delineated in Crim.R.11(C), known as "Boykin" rights, and the effect of a waiver of those rights. See Crim.R. 11(C); see, also, Boykin v. Alabama (1969),395 U.S. 238, 89 S.Ct. 1709; State v. Ballard ((1981), 66 Ohio St.2d 473,423 N.E.2d 115, paragraphs one and two of the syllabus. In proceedings affecting juveniles, the United States Constitution imposes an obligation to proceed with the same basic requirements of due process and fairness applicable in an adult criminal proceeding. See In re Gault (1967),387 U.S. 1, 12-13, 87 S.Ct. 1428, 1436; see, also, In re Booker (July 23, 1999), Hamilton App. No. C-980214, unreported.
Juv.R. 29(D) seeks to protect the same rights secured to criminal defendants in Boykin — the rights to confront witnesses and to compulsory process, and the privilege against compulsory self-incrimination. Therefore, we modify the currently accepted standard in Ohio for reviewing a juvenile court's compliance with Juv.R. 29(D) and the waiver of those rights: whether the juvenile court substantially complied with Juv.R. 29(D). See In re Etter, 134 Ohio App.3d at 698,731 N.E.2d at 697; see, also, In re Christopher R.,101 Ohio App.3d at 448-449, 655 N.E.2d at 282. We hold that, before accepting a juvenile's admission, the magistrate or court must personally address the juvenile to ensure that he or she has been meaningfully informed of the Juv.R. 29(D)(2) rights and the effect of a waiver of those rights. See State v.Ballard, paragraph two of the syllabus. We further hold that the juvenile's counsel cannot waive the juvenile's rights on behalf of his or her client, because Juv.R. 29(D) requires the court to address the juvenile personally before accepting the admission. See In re Etter,134 Ohio App.3d at 490-491, 731 N.E.2d at 698-699.
Here, the magistrate did not enter into the colloquy required by Juv.R. 29(D). Therefore, the magistrate could not have determined if Pope had been meaningfully informed of his rights and had thus knowingly, intelligently, and voluntarily waived them. See Juv.R 29(D).
Pope's appointed appellate counsel notified this court at oral argument that Pope is not presently confined, but is on parole. Any relief for Pope in this appeal may well present only a hollow victory. Since Pope is now eighteen years of age, new considerations and limitations for disposition confront the juvenile court. The dilemma for a juvenile court in cases of severe mental disorders is no better illustrated than by Pope's entreaty to the judge:
 I'm going to be good. * * * I will not mess up no more. * * * I'm going to die. I want to go home. Every day they take me away from my family all the time. I can't go home to my son. I just got offered a job. I can't do work, do nothing. I'm going to die. I'm going to die. Man, she said she was going to help me. Mama, she promised she was going to help me.
 Nevertheless, we have no recourse but to sustain Pope's second assignment of error and to vacate his admission to the magistrate prior to disposition.
Having vacated Pope's admission on the ground that the magistrate did not comply with Juv.R.29(D), we do not address his claim that he was not competent to enter an admission or that his trial counsel was ineffective. As we have noted before, however, a juvenile court may consider a juvenile's mental capacity in determining whether his waiver of Juv.R. 29(D) rights was knowing, intelligent and voluntary. See In reJohnson (1995), 106 Ohio App.3d 38, 41, 665 N.E.2d 247, 248. Pope's competency to enter an admission may well be an issue for the court to resolve on remand.
Accordingly, the judgment of the juvenile court is reversed and this case is remanded for further proceedings in accordance with law.
Judgment reversed and cause remanded.
Hildebrandt and Painter, JJ., concur.