JOURNAL ENTRY AND OPINION
{¶ 1} Appellant J.A., a minor, appeals the juvenile court's decision finding him delinquent. Finding no merit to this appeal, we affirm.
 {¶ 2} A complaint was filed in juvenile court charging J.A., age 14, with four counts of felonious assault with firearm specifications and one count of improperly discharging a firearm into a habitation. The matter proceeded to trial with the following evidence presented.
 {¶ 3} On November 11, 2002, shots were fired into the home of Teresa Lavant on Wade Park Drive in Cleveland At the time of the shooting, Lavant was home with four of her children and three friends. Lavant testified that bullets entered both her kitchen windows and her children's upstairs bedroom windows.
 {¶ 4} Lavant's neighbor, Tanisha Thomas, observed the shooting and provided the police with a physical description of the shooter and the person accompanying him. She described the shooter as a dark-skinned black male, five feet six inches tall, approximately 145 pounds, wearing a "black hoodie,"[1] light blue jeans, black and white Air Force One gym shoes, and a face mask.
 {¶ 5} Following the gunfire, Lavant received harassing phone calls. The calls appeared on the "caller I.D." on her phone and were heard by Cleveland Police Officer Danny Ellis. The callers threatened Lavant, stating that the "job's not done" and that they would be back to "finish the job." After tracing the calls to an address in Cleveland, Officer Ellis dispatched a unit to investigate the source of the calls. Upon arriving at the address, the police discovered four boys in the home, including J.A. The police escorted the boys back to Lavant's home for a line-up.
 {¶ 6} Although J.A. was not wearing Air Force One gym shoes at the time of the line-up, Thomas identified him as the shooter based on his other apparel. She also identified another minor, R.M., as the person accompanying J.A. during the shooting. However, at trial, Thomas was not able to identify J.A. as the perpetrator. She stated that the perpetrator was much darker than J.A. and that she had not previously seen him.
 {¶ 7} Officer Ellis testified that J.A. was arrested based on the identification of Thomas and two other witnesses. He stated that approximately five or six shell casings were found in and around Lavant's house. He further testified that bullet holes were found in the kitchen window, kitchen cabinet, the siding of the house, and an outside shed.
 {¶ 8} R.M. testified that J.A. was the shooter. He also corroborated Thomas' testimony that J.A. was wearing a black "hoodie," blue jeans, and a white t-shirt the day of the shooting. He indicated that he had accompanied J.A. to the area of East 73rd Street and Wade Park because J.A. was interested in a girl living there. After witnessing J.A. shoot at the house, R.M. rode his bike to his friend's house. R.M. testified that J.A. also returned to the friend's house. Although R.M. claimed he did not participate in any phone calls, he confirmed that J.A. spoke on the phone and that the police arrived shortly thereafter.
 {¶ 9} Testifying in his own defense, J.A. claimed that he learned from D, a minor, that R.M. was the shooter. He denied ever being in the area of the shooting. He testified that he was at the home of A until about 4:30, when he left for D's house. When he arrived at D's house, D was on the phone making harassing calls and then the police arrived, escorting all four boys to the scene of the shooting. J.A. also testified that he was wearing Air Force One gym shoes the day of the incident and that R.M. was wearing a black "hoodie."
 {¶ 10} The trial court found J.A. guilty of all four counts of felonious assault with the firearm specifications and the one count of improperly discharging a firearm into a habitation, adjudged him delinquent, and sentenced him to a term of not less than four years at the Ohio Department of Youth Services. J.A. appeals, raising three assignments of error.
 Sufficiency and Weight of the Evidence {¶ 11} In his first assignment of error, J.A. contends that the trial court erred by denying his Crim.R. 29 motion for acquittal because the State failed to produce sufficient evidence identifying him as the shooter. Additionally, J.A. argues that the conviction is against the manifest weight of the evidence.
 {¶ 12} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus:
"Pursuant to Criminal Rule 29(A), a court shall not order an entry ofjudgment of acquittal if the evidence is such that reasonable minds canreach different conclusions as to whether each material element of acrime has been proved beyond a reasonable doubt."
 {¶ 13} See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113. Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of theevidence to support a criminal conviction is to examine the evidencesubmitted at trial to determine whether such evidence, if believed, wouldconvince the average mind of the defendant's guilt beyond a reasonabledoubt. The relevant inquiry is whether, after viewing the evidence in alight most favorable to the prosecution, any rational trier of fact couldhave found the essential elements of the crime proven beyond a reasonabledoubt." (Citations omitted.)
 {¶ 14} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held in State v. Thompkins, 78 Ohio St.3d 380,386-387, 1997-Ohio-52:
"* * * Weight of the evidence concerns the inclination of the greateramount of credible evidence, offered in a trial, to support one side ofthe issue rather than the other. It indicates clearly to the jury thatthe party having the burden of proof will be entitled to their verdict,if, on weighing the evidence in their minds, they shall find the greateramount of credible evidence sustains the issue which is to be establishedbefore them. Weight is not a question of mathematics, but depends on itseffect in inducing belief." (Citations omitted.)
 "* * * The court, reviewing the entire record, weighs the evidence andall reasonable inferences, considers the credibility of witnesses anddetermines whether in resolving conflicts in the evidence, the juryclearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised only in theexceptional case in which the evidence weighs heavily against theconviction." (Citations omitted.)
 {¶ 15} Felonious assault is defined in R.C. 2903.11(A)(2) as knowingly "caus[ing] or attempt[ing] to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 16} J.A. was also found guilty of violating R.C. 2923.161(A)(1), which provides that no person shall knowingly discharge a firearm at or into an occupied structure without privilege to do so.
 {¶ 17} J.A. contends that the trial court relied solely on the biased and uncorroborated testimony of R.M. in reaching its decision. Because none of the other eyewitnesses were able to positively identify him at trial, he argues that his conviction is supported by insufficient evidence. He also argues that the State's failure to produce the gun, to test the casings for fingerprints, or to perform a gunpowder residue test undermines any conviction and mandates a reversal. We disagree.
 {¶ 18} Contrary to J.A.'s assertion, R.M.'s testimony was corroborated. Here, Thomas and Officer Ellis testified that J.A. was identified as the perpetrator on the day of the shooting. Even though Thomas did not identify J.A. at trial, her earlier identification based on his apparel was still credible evidence. Any rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt, given R.M.'s testimony naming J.A. as the perpetrator combined with Thomas' earlier identification and J.A.'s presence at the home where the harassing phone calls originated.
 {¶ 19} Although there was contradictory testimony from J.A. and R.M. as to the identity of the shooter, the credibility of witnesses is for the trier of fact to determine. State v. Thomas (1982),70 Ohio St.2d 79. Moreover, because the State presented sufficient evidence as to the essential elements of the offenses through the testimony of its witnesses, it was not necessary to submit any other evidence, i.e., the gun, fingerprint analysis, or gunpowder residue test results.
 {¶ 20} J.A. also argues that his conviction is against the manifest weight of the evidence because the State failed to present sufficient evidence to support his conviction. Although J.A. correctly states the standard for a manifest weight of evidence challenge, he presents an argument based solely on the sufficiency of the evidence. Thus, having already found that sufficient evidence exists to support the conviction, we reject this argument.
 {¶ 21} J.A.'s first assignment of error is overruled.
 Absence of Guardian Ad Litem {¶ 22} In his second assignment of error, J.A. contends that the trial court erroneously proceeded to trial without the guardian ad litem as required under R.C. 2151.281(A) and Juv.R. 4(B). He argues that the absence of a guardian ad litem to protect his statutory interests mandates a reversal.
 {¶ 23} Pursuant to R.C. 2151.281(A) and Juv.R. 4(B), the court is required to appoint a guardian ad litem in a delinquency proceeding when the court finds that there is a conflict of interest between the child and the child's parent. R.C. 2151.281(A) provides, in relevant part:
"(A) The court shall appoint a guardian ad litem to protect theinterest of a child in any proceeding concerning an alleged oradjudicated delinquent child or unruly child when either of the followingapplies:
* * *
(2) The court finds that there is a conflict of interest between thechild and the child's parent, guardian, or legal custodian."
 {¶ 24} Similarly, Juv.R. 4(B) provides:
"* * * The court shall appoint a guardian ad litem to protect theinterests of a child or incompetent adult in a juvenile court proceedingwhen:
* * *
(2) The interests of the child and the interests of the parentmay conflict."
 {¶ 25} The role of a guardian ad litem in a delinquency adjudication is to ensure that the statutory rights of the juvenile are protected. In re Sappington (1997), 123 Ohio App.3d 448, 454, citing In reJohnson (1995), 106 Ohio App.3d 38, 42-43; Lovejoy v. Cuyahoga Cty.Dept. of Human Servs. (1991), 76 Ohio App.3d 514, 517. Additionally, the guardian ad litem is responsible for investigating the child's situation and, based on that investigation, making recommendations to the court that would be in the child's best interests. In re Becerra, Cuyahoga App. No. 79715, 2002-Ohio-678, citing In re Baby Girl Baxter (1985),17 Ohio St.3d 229.
 {¶ 26} In the instant case, the trial court found that a conflict of interest existed between J.A. and his father and, therefore, it appointed a guardian ad litem. J.A. argues that because his guardian ad litem failed to appear for trial, his statutory rights were not protected and, as a result, the trial court's decision should be reversed. Because J.A. has failed to offer any evidence demonstrating how his statutory rights were violated, we find this argument lacks merit.
 {¶ 27} Here, J.A. was represented by counsel throughout the course of the proceedings. Although the presence of an attorney at a delinquency hearing does not necessarily negate the need or requirement for a guardian ad litem, absent any evidence that the child was prejudiced by the guardian ad litem's failure to appear for trial, we decline to reverse the trial court's decision. See In re Becerra, supra; In reTaylor (June 10, 1999), Cuyahoga App. No. 74257. Unlike the cases where a parent pressures a child to enter a guilty plea without the assistance of counsel or the parent recommends commitment to the court against the child's penal interests, J.A. was represented by counsel and his father made no recommendation to the court. Compare In re Sappington, supra (father encouraged child to plead guilty and to proceed without counsel); In re Johnson (1995), 106 Ohio App.3d 38 (grandmother represented child at delinquency proceedings and recommended commitment of child to the court).
 {¶ 28} R.C. 2151.281 does not contain any express requirement that the guardian ad litem be present at trial or an analogous provision mandating reversal if the guardian ad litem is absent from trial. Rather, the statute provides that the guardian ad litem shall be appointed to protect the interests of the child when a conflict exists with the parent. Our review of the record indicates that J.A.'s statutory rights were protected and, moreover, we find no basis to believe that the outcome of the proceedings would have changed if the guardian ad litem had been present during trial.
 {¶ 29} Accordingly, J.A.'s second assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 30} In his final assignment of error, J.A. argues that his counsel was ineffective by failing to subpoena any witnesses in his defense, failing to contact J.A.'s father prior to trial, and referencing information in his opening and closing arguments that was subject to an attorney-client privilege and was outside the record.
 {¶ 31} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington
(1984), 466 U.S. 668; State v. Bradley (1989), 42 Ohio St.3d 136. Pursuant to Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.Bradley, 42 Ohio St.3d 136, at paragraph one of the syllabus. To show such prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id. at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. State v. Sallie (1998), 81 Ohio St.3d 673, 674.
 {¶ 32} In the instant case, J.A. fails to offer any evidence as to how his counsel's alleged deficiencies prejudiced his case. Without addressing whether counsel's performance was deficient, we find that even if the alleged errors had not occurred, the outcome of the case would not have changed. Here, the evidence overwhelmingly demonstrated that J.A. was guilty of the crimes charged. R.M. testified that J.A. fired a gun into Lavant's home. Thomas identified J.A. as the perpetrator on the day of the shooting. Additionally, Officer Ellis testified that J.A. was at the home where the harassing phone calls originated. Because J.A. failed to demonstrate that the result of the proceedings would have been different had his attorney acted differently, we find that his argument of ineffective assistance of counsel fails.
 {¶ 33} The final assignment of error is overruled.
 {¶ 34} The judgment is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kenneth A. Rocco, A.J. and James J. Sweeney, J., concur.
[1] In this context, "hoodie" refers to a hooded sweatshirt.