OPINION
{¶ 1} Defendant-Appellant, Musa Joof, appeals from the May 5, 2004 judgment entry of the Franklin County Court of Common Pleas convicting him of felonious assault. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} This case arises from events that occurred on April 17, 2003. Defendant was incarcerated in the Franklin County Jail located at the Jackson Pike facility, Columbus, Ohio. On the morning of April 17, 2003, an inmate reported to Deputy Sheriff John Thompson that the defendant took his tray after tray pass. Deputy Thompson and Deputy Sheriff Lawson Godfrey entered the dorm and asked the defendant if he was involved in taking the inmate's tray. The defendant did not respond to the deputies. The defendant finally told Deputy Godfrey to take the tray. Deputy Thompson instructed the defendant to "roll his stuff up" as he was being moved to avoid further altercations. (Tr. 47.) The defendant told Deputy Thompson that he was not going to move. Deputies Thompson and Godfrey exited the cell. Deputy Thompson contacted Corporal Edward Schillig and explained the situation to him. Deputies Thompson, Godfrey and Corporal Schillig returned back to the defendant's cell. When they entered, the defendant was laying on his bunk with the sheet up over his shoulders. Corporal Schillig tried to talk to the defendant, but the defendant pulled the sheet up over his head. Corporal Schillig reached down, grabbed the sheet and pulled it back off of the defendant's head. The defendant jumped to his feet, ran past Deputy Thompson and Corporal Schillig and struck Deputy Godfrey in the head. Deputy Thompson noticed that the defendant was holding what appeared to be a pencil. Deputy Thompson yelled, "he's got a pencil, he has a pencil." (Tr. 48.)[1] Deputy Godfrey testified that the defendant struck him with such "full force" that the lead of the pencil was embodied in his head. (Tr. 110.)
 {¶ 3} Deputy Thompson grabbed the defendant's right hand at the wrist, while Corporal Schillig grabbed the defendant at the waist and pulled him to the ground. Deputy Thompson lost grip of the defendant's right hand. The defendant attempted to stab Corporal Schillig in the back. Deputy Thompson struck the defendant in the face with his closed fist commanding the defendant to drop the pencil. Once the defendant dropped the pencil, the deputies and the corporal gained control of the defendant. The defendant was handcuffed and escorted to a holding cell in the booking area. Deputy Godfrey suffered a puncture wound to his head and was scratched underneath his eye. He was transported to Grant Medical Center for treatment.
 {¶ 4} On April 25, 2003, the defendant was indicted on one count of felonious assault, a felony of the first degree, in violation of R.C.2903.11, for knowingly causing or attempting to cause physical harm to Deputy Godfrey by means of a deadly weapon. On March 2, 2004, the defendant's case proceeded to trial. Plaintiff-appellee, the State of Ohio ("the State"), called Deputies Godfrey and Thompson, and Corporal Schillig to testify. The defense rested without calling any witnesses. The defendant was found guilty of felonious assault.
 {¶ 5} On April 30, 2004, the trial court sentenced the defendant to four years' incarceration. It is from this sentencing entry that the defendant appeals from, assigning the following as error:
The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.
 {¶ 6} The defendant argues that the evidence against him was insufficient to support his conviction. Specifically, the defendant argues that the State was unable to prove that the pencil used was in fact a deadly weapon.
 {¶ 7} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." Statev. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact.Thompkins, at 386.
 {¶ 8} Regarding the weight of evidence, the Supreme Court of Ohio inThompkins stated as follows:
* * * Weight of the evidence concerns "the inclination of the greateramount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greateramount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief."
(Emphasis sic.) Id. at 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 9} Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Defendant argues that the judgment was against the manifest weight of the evidence. When assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Furthermore, "`[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 10} Defendant was convicted of felonious assault. R.C. 2903.11(A) provides in part that "[n]o person shall knowingly * * * (2) [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon[.]" R.C. 2901.01(A)(3) defines "physical harm" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2923.11(A) defines "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." Defendant argues that, at trial, the State failed to prove that the pencil used was a deadly weapon. Defendant avers that the State failed to provide expert or lay testimony, which supported the State's claim that the pencil was a deadly weapon.
 {¶ 11} The Eight Appellate District in In re Smith (2001),142 Ohio App.3d 16, 24, in finding that a ballpoint pen could be a deadly weapon, held that:
An item does not have to be one that kills in order to be a deadly weapon. No item, no matter how small or commonplace, can be safely disregarded for its capacity to cause death when it is wielded with the requisite intent and force. See State v. Deboe (1977),62 Ohio App.2d 192, 193-194, 16 O.O.3d 467, 468-469, 406 N.E.2d 536, 537-538. A reasonable trier of fact could find the ballpoint end of a pen sufficiently sharp that it could pierce the human body and, if used on a particularly vulnerable spot, could cause death. * * *
 {¶ 12} In this case, Deputy Godfrey testified that the defendant used such "full force" that the lead of the pencil was embedded in his head. Deputy Godfrey sustained a puncture wound to his forehead and a scratch underneath his eye. The end of the pencil was sufficiently sharp enough that it pierced Deputy Godfrey's head. If used on a particularly vulnerable spot, it could have resulted in Deputy Godfrey's death.
 {¶ 13} A violation of R.C. 2903.11(A) is generated by the use of a deadly weapon, herein two toothbrushes and a pencil wrapped together (a "shank") were fashioned to a sharp point. The shank (State's Exhibit 13) was properly admitted into evidence over defendant's trial counsel's objection. (Tr. 133.) The jury was able to see for itself how the pencil had been adapted to function as a deadly weapon. Therefore, expert testimony was not required before the jury could find that the shank was capable of inflicting death. See State v. Coney (Feb. 16, 1995), Franklin App. No. 94APA05-670 ("[c]ommon sense and experience of those upon this jury observing the instrument that was in the hands of this defendant, under the circumstances as presented within this case, dictate the appropriate finding.").
 {¶ 14} Additionally, the State adduced sufficient evidence pointing toward the shank being used as a deadly weapon. The State presented the testimony of Deputy Godfrey, who was injured by the shank, and Deputy Thompson, who removed the shank from defendant's possession. The defendant presented no testimony that he was using the pencil in a manner consistent with its legitimate purpose. Furthermore, we have reviewed the trial court's instructions to the jury on "deadly weapon" and find these instructions to be a verbatim reading of R.C. 2923.11(A).
 {¶ 15} After thoroughly reviewing the record, we find that there was sufficient evidence presented for the trier of fact to find that the essential elements of the offense of felonious assault were proven beyond a reasonable doubt. We cannot say that the jury lost its way. As such, defendant's sole assignment of error lacks merit and is not well-taken.
 {¶ 16} Based on the foregoing reasons, defendant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Sadler and French, JJ., concur.
[1] The pencil that the defendant used was a shank, a handmade weapon used for cutting and stabbing. (Tr. 58.) The shank comprised of a pencil and two toothbrushes wrapped together.