[Cite as *State v. Henderson*, 2018-Ohio-4263.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 17CA104 |
| | : | |
| DANTE HENDERSON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Richland County Court
                                of Common Pleas, Case No. 2016 CR
                                0713



JUDGMENT:                       AFFIRMED



DATE OF JUDGMENT ENTRY:         October 18, 2018



APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

GARY BISHOP                             DALE MUSILLI
RICHLAND COUNTY PROSECUTOR              105 Sturges Avenue
                                        Mansfield, OH 44903

JOSEPH C. SNYDER
38 South Park Street
Mansfield, OH 44902

*Delaney, J.*

{¶1} Defendant-Appellant Dante Henderson appeals his June 16, 2017 conviction and sentence by the Richland County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} Defendant-Appellant Dante Henderson was indicted for one count of Possession of a Deadly Weapon While Under Detention, a second-degree felony in violation of R.C. 2923.131(B) and (C)(2)(b)(i). Henderson entered a plea of not guilty and the matter proceeded to a jury trial on June 15, 2017. The following evidence was adduced at trial.

{¶3} Henderson is an inmate at the Mansfield Correctional Institution located in Mansfield, Ohio, serving a sentence for aggravated robbery, a first-degree felony. On January 23, 2016, Corrections Officer Kevin Theory was assigned to Housing Unit 1-D at the Mansfield Correctional Institution. Henderson's prison cell is located in Housing Unit 1-D. C.O. Theory was conducting his rounds in Housing Unit 1-D when he smelled the odor of marijuana coming from Henderson's cell. C.O. Theory opened the cell door and asked Henderson to come out so C.O. Theory could perform a pat down. The purpose of the pat down was to determine if the inmate was holding any contraband, such as drugs.

{¶4} Henderson complied and posted up on the wall by facing the wall, putting his hands flat on the wall, and spreading his legs a little farther than shoulder-width apart. C.O. Theory started to perform the pat down, but Henderson turned his shoulders. C.O. Theory told Henderson to put his hands back on the wall and continued the pat down, when Henderson turned his shoulders again. Because Henderson twice pulled away from

the wall and turned his body, C.O. Theory felt there was a security issue because Henderson was hiding something. C.O. Theory handcuffed Henderson's hands behind his back and took Henderson to a Day Room to conduct a strip search. A Day Room is a vacant room within the Housing Unit. This particular Day Room had large window in the door and a large window next to the door facing the hallway so the interior of the room was visible to the corrections officers from outside the room. Before entering the Day Room with Henderson, C.O. Theory did a walk-through of the room to determine if any inmates or contraband were in the room. C.O. Theory did not observe any contraband in the Day Room before he took Henderson inside.

{¶5}   C.O. Theory placed the handcuffed Henderson in the Day Room and locked the door while he awaited the arrival of another male corrections officer to assist with the strip search. While waiting, C.O. Theory walked to the officer's station to check on the status of the other corrections officer. C.O. Theory then walked back to the Day Room and posted himself in front of the door, facing the window in the doorway. While he was standing at the doorway, C.O. Theory observed through the window that Henderson had a shank in his hand. He watched Henderson, with his side facing C.O. Theory, place the shank on the windowsill of the window next to the door. After Henderson put the shank on the windowsill, he walked to the exterior wall of the room.

{¶6}   Once the second corrections officer arrived, he and C.O. Theory entered the Day Room and secured the shank. They performed a strip search on Henderson and found no other contraband.

{¶7}   C.O. Theory described the shank as six inches in length, with a three inch exposed piece of metal. The handle of the shank was wrapped in cloth. The exposed

metal appeared to have a beveled, tapered edge to give it the sharp cutting edge like a knife. The State presented a photograph of the shank observed by C.O. Theory in State's Exhibit 1:



{¶8}   At the close of the State's case, Henderson moved for an acquittal pursuant to Crim.R. 29. The trial court denied the motion.

{¶9}   The jury found Henderson guilty. The trial court sentenced Henderson to seven years in prison, to be served concurrently with his current sentence. (Sentencing Entry, June 16, 2017).

{¶10} It is from this judgment Henderson now appeals.

**ASSIGNMENTS OF ERROR**

{¶11} Henderson raises three Assignments of Error:

{¶12} "I. THERE WAS INSUFFICIENT EVIDENCE WITH WHICH TO CONVICT APPELLANT OF POSSESSING A DEADLY WEAPON.

{¶13} "II. THE MANIFEST WEIGHT OF THE EVIDENCE DOES NOT SUPPORT THE CONVICTION.

{¶14} "III. THE TRIAL COURT ERRED IN DENYING APPELLANT'S THE [SIC] RULE 29 MOTION."

**ANALYSIS**

**I. and III.**

{¶15} Henderson claims in his first Assignment of Error the verdict was not supported by sufficient evidence. He argues in his third Assignment of Error the trial court erred in denying his motion for acquittal pursuant to Crim.R. 29. We consider the errors together because an appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. *State v. Larry*, 5th Dist. Holmes No. 15CA011, 2016–Ohio–829, ¶ 20 citing *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 1995–Ohio–104. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *See State v. Dowdle*, 5th Dist. Stark No. 2015CA00119, 2016–Ohio–485, ¶ 16.

{¶16} Henderson was convicted of Possession of a Deadly Weapon While Under Detention in violation of R.C. 2923.131(B) and (C)(2)(b)(i). R.C. 2923.131(B) states, "[n]o person under detention at a detention facility shall possess a deadly weapon." R.C. 2923.131(C)(2)(b)(i) states:

(C) Whoever violates this section is guilty of possession of a deadly weapon while under detention.

* * *

(2) If the offender, at the time of the commission of the offense, was under detention in any other manner, possession of a deadly weapon while under detention is one of the following:

* * *

(b) A felony of the second degree if any of the following applies:

(i) The most serious offense for which the person was under detention is a felony of the first degree committed on or after July 1, 1996, or an aggravated felony of the first degree committed prior to July 1, 1996.

{¶17} R.C. 2923.11(A) defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶18} Upon appeal, Henderson does not dispute the State established two elements of R.C. 2329.131: (1) Henderson was in possession of the shank on January 23, 2016, and (2) Henderson was under detention on January 23, 2016 for a first-degree felony. Henderson argues the State failed to establish the shank in Henderson's possession was a deadly weapon pursuant to R.C. 2923.131(B) and R.C. 2923.11(A).

{¶19} Henderson contends the testimony of C.O. Theory was insufficient to establish the shank possessed by Henderson on January 23, 2016 was a deadly weapon. C.O. Theory testified as follows:

A. The said shank up against a ruler to show the length of it, as you can see, it's six inches, that's pretty good size, ah, the three inch exposed blade on it.

Q. And what was it, you said the, what is it about the blade portion that's alarming, if at all?

A. It appears that it is even like, almost like the beveled tapered edge on it to give it that sharp, ah cutting edge like a knife would have.

* * *

Q. I think you mentioned previously that, um, you classified that as, as being, that State's Exhibit 6 as being deadly –

A. Yes, ma'am.

Q. – is that right?

A. Yes

Q. Why do you say it's deadly?

A. It's, I mean it's a knife, I mean you can kill someone with a knife, so.

Q. How are, how are shanks used in the prisons?

A. Ah, protection mostly, I mean in fights is when we see it.

(T. 113, 117).

{¶20} The Eighth District Court of Appeals in *In re Smith*, 142 Ohio App.3d 16, 24, 753 N.E.2d 930 (8th Dist.2001), in finding that a ballpoint pen could be a deadly weapon, held that:

An item does not have to be one that kills in order to be a deadly weapon.

No item, no matter how small or commonplace, can be safely disregarded

for its capacity to cause death when it is wielded with the requisite intent and force. See *State v. Deboe* (1977), 62 Ohio App.2d 192, 193-194, 16 O.O. 3d 467, 468-469, 406 N.E.2d 536, 537-538. A reasonable trier of fact could find the ballpoint end of a pen sufficiently sharp that it could pierce the human body and, if used on a particularly vulnerable spot, could cause death.

*State v. Joof,* 10th Dist. Franklin No. 04AP-579, 2005-Ohio-3275, ¶ 11.

{¶21} In *State v. Samples*, 5th Dist. Stark No. 2004CA00088, 2005–Ohio–86, this Court determined that a four-inch nail found in the possession of an inmate could be considered a deadly weapon pursuant to the statute even though the inmate had not used the nail as a weapon. *Id.* at ¶ 18. We found the inmate's failure to use the nail as a weapon did not negate the nail's nature as a deadly weapon. *Id.* The police officer who discovered the nail testified that in his experience, he had seen different items fashioned into weapons, including nails and metal objects. *Id.*

{¶22} Photographs of the shank and the shank were properly admitted into evidence. The jury was able to see for itself how the six-inch long piece of metal had been sharpened into a three-inch blade and wrapped in cloth for a handle. Expert testimony was not necessary before the jury could find that the shank was capable of inflicting death. *See State v. Joof*, 2005-Ohio-3275, ¶ 13 citing *State v. Coney*, 10th Dist. Franklin No. 94AP05-670 (Feb. 16, 1995) ("[c]ommon sense and experience of those upon this jury observing the instrument that was in the hands of this defendant, under the circumstances as presented within this case, dictate the appropriate finding."). C.O. Theory testified the shank possessed by Henderson had been fashioned into a knife, which common sense

and experience dictate that a knife is capable of inflicting death when wielded with the requisite intent and force.

{¶23} We find there was sufficient evidence presented to show that Henderson was in possession of a deadly weapon. Henderson's first and third Assignments of Error are overruled.

**II.**

{¶24} Henderson argues in his second Assignment of Error that his conviction was against the manifest weight of the evidence. We disagree.

{¶25} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶26} Henderson argues that regardless of C.O. Theory's testimony that the shank was a knife, it was error to infer the shank was a deadly weapon. Henderson argues evidence was necessary to prove the shank's deadly nature. As in *State v. Samples*, we find the fact that Henderson did not use the shank as a weapon does not negate its nature as a deadly weapon. In this case, we cannot say the jury lost its way when it determined

the shank was a deadly weapon. Henderson's conviction was not against the manifest weight of the evidence.

{¶27} Henderson's second Assignment of Error is overruled.

## CONCLUSION

{¶28} The judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.